478

[Civ. No. 13653.   First Dist., Div. One.   June 30, 1948.]

LILLIAN R. DANDINI, Respondent, v. A. O. DANDINI, Appellant.

Leo R. Friedman for Appellant.

Johnson, Harmon & Stirrat and William H. Henderson for Respondent.

PETERS, P. J.—The plaintiff, Lillian R. Dandini, and the defendant, A. O. Dandini, were married in 1932. In 1946, plaintiff secured a decree of separate maintenance, and an award of $150 per month. Subsequently, defendant, while in arrears in his payments on this award, secured a Nevada divorce from plaintiff, and was contemplating remarriage. Plaintiff thereupon secured a default judgment against defendant, determining that the Nevada divorce was void and of no legal effect, and enjoining defendant from marrying any other person. Over two months after such judgment had been secured, the defendant moved to vacate and set aside his default. The trial court denied the motion, and from the order of denial the defendant appeals.

The complaint which forms the basis of the default judgment is entitled "Complaint for Injunction," and was filed June 27, 1946. It alleges that plaintiff and defendant were married in August, 1932; that in September, 1942, plaintiff commenced, in California, an action for separate maintenance against defendant, and secured personal service on defendant, and he appeared in said action; that on February 13, 1946, plaintiff secured a decree of separate maintenance and an award of $150 per month for her support; that said decree of separate maintenance and award is in full force and effect; that defendant has never paid one cent pursuant to that decree; that defendant, for over 15 years prior to that decree and since that date, has been, and is now, a resident and domiciliary of California; that on March 11, 1946, defendant went to Nevada for the

purpose of setting up a pretended residence in that state in order to there secure a divorce from plaintiff; that he lived at a designated dude ranch for six weeks, and, on April 23, 1946, filed, in Nevada, a complaint for divorce; that plaintiff is now, and for all her past life has been, a resident of California; that defendant "now is a resident of the State of California and has his domicile in said state; . . . that defendant A. O. Dandini is not now and never has been a resident of Nevada and has never had and does not now have his domicile in the State of Nevada"; that plaintiff was not personally served in the Nevada divorce action, nor did she ever submit herself to the jurisdiction of the Nevada court; that the Nevada court at no time had jurisdiction over plaintiff; that on June 3, 1946, defendant was granted a pretended divorce from plaintiff; "that said pretended divorce is void and of no effect"; that immediately after the pretended divorce was granted, and on June 4, 1946, defendant returned to San Francisco, where he has since remained; that defendant has "no property or employment in Nevada"; that defendant now is about to enter "a pretended marriage" with one Juliana Sesenna on June 29, 1946; that such marriage ceremony will be held unless defendant is restrained and enjoined; "that if said pretended marriage ceremony and contract is permitted to take place and is not enjoined by this court, defendant A. O. Dandini will cause said Juliana Luisa Cungi [Sesenna] to be represented as his wife and will assume status and relationship as that of a married person with said Juliana Luisa Cungi [Sesenna] as aforesaid; that said actions will cause plaintiff mortification, chagrin, worry, annoyance and public ridicule; that if said marriage ceremony is permitted to take place the defendant will expend money for the support of said Juliana Luisa Cungi [Sesenna] and will assume this financial burden to the detriment of plaintiff's collecting her above mentioned award of support and maintenance from defendant; that if said pretended ceremony is consummated it will cause affiant the necessity of bringing litigation in an effort to collect her said award for support and maintenance; that if said preliminary restraining order and injunction are not issued, the said marriage ceremony will be conducted to the irreparable damage of this plaintiff; that the plaintiff has no adequate remedy at law."

The prayer of the complaint was "that the pretended divorce decree in . . . Nevada be declared void and of no effect;

that a temporary restraining order be granted plaintiff enjoining and restraining defendant from entering into or being a party to a contract or ceremony of marriage with said Juliana Luisa Cungi [Sesenna], whether in the State of California or elsewhere; . . . that upon final hearing said injunction be made perpetual''; and for other and further relief.

The complaint had attached affidavits of two witnesses who averred that defendant secured his divorce in Reno on June 3, 1946, and left by train for San Francisco on June 4, 1946. The record shows that the court issued a temporary restraining order enjoining defendant from entering into a marriage contract with Juliana Sesenna in California or elsewhere, and that said restraining order, the summons and copies of the pleadings were duly and properly served upon defendant on the evening of June 27, 1946. The hearing was set for July 3, 1946. It is averred by plaintiff, and not denied by defendant, that defendant, in direct violation of the restraining order, entered into a ceremonial marriage with Juliana Sesenna in Nevada on June 28, 1946.

On July 3, 1946, a hearing was had, but defendant did not appear. The process server testified to the fact of service upon defendant on June 27, 1946. The trial court, on July 3, 1946, made its order for a preliminary injunction forbidding Dandini from entering into a marriage with Juliana Sesenna, or anyone, in California, or elsewhere, during the pendency of the action and until its final determination or until the court should otherwise order. Plaintiff applied for a default judgment, which was granted on July 11, 1946. The judgment recited that defendant had been duly served and failed to appear; that default was entered, and after evidence was introduced in open court in support of the allegation of the complaint ''and it appearing that all of the allegations of plaintiff's complaint are true and that plaintiff is entitled to a judgment and decree as prayed for,'' the court adjudged that the Nevada decree ''is void and of no effect'' and that ''defendant A. O. Dandini be and he is hereby permanently enjoined and restrained from entering into or being a party to a contract or ceremony of marriage with Juliana Luisa Cungi Sesenna or anyone whatever whether in the State of California or elsewhere.''

Defendant filed his notice of motion to vacate on September 17, 1946, two months and six days after entry of the default

judgment, alleging that the grounds thereof were lack of jurisdiction; that the complaint did not state sufficient facts to constitute a cause of action or support the judgment; that no service was ever made upon him in the action, and that his default was entered through his mistake, inadvertence, surprise and excusable neglect. At the same time he filed his proposed answer to the complaint in which he denied the allegations of the complaint that he and plaintiff were still husband and wife, alleged that he had procured a valid decree of divorce in Nevada, denied that his residence in Nevada was only pretended, and alleged that from and after March 11, 1946, he had been and then was domiciled in Nevada.

The plaintiff filed an opposing affidavit and, in addition, produced at the hearing the process server who again testified as to serving the defendant on June 27, 1946. No further evidence was offered. The court thereupon refused to vacate the default judgment, and from that order the defendant appeals.

The first contention of the defendant is that in this type of proceeding the court had no jurisdiction to declare that the Nevada judgment of divorce was void. In this connection the defendant concedes ''that where a decree of divorce rendered in the sister state is offered in evidence, either as the foundation for a right or as a bar or estoppel against an asserted right, the court, in determining the value of such decree as evidence, may inquire into the jurisdiction of the court rendering such decree.'' (App. Op. Br., p. 12.) This concession is undoubtedly in accord with the California law. (*Crouch* v. *Crouch,* 28 Cal.2d 243 [169 P.2d 897]; *Brill* v. *Brill,* 38 Cal.App.2d 741 [102 P.2d 534]; *Kegley* v. *Kegley,* 16 Cal.App.2d 216 [60 P.2d 482].) Indeed, it is clear that such conceded power exists under the federal decisions. That was the precise holding in the ''second'' Williams case. (*Williams* v. *North Carolina,* 325 U.S. 226 [65 S.Ct. 1092, 89 L.Ed. 1577, 157 A.L.R. 1366].) But, says appellant, the conceded rule is inapplicable in the instant case because the question as to whether the Nevada court had jurisdiction was not raised as the foundation of a right or a bar or estoppel of an asserted right, but was brought into issue in a proceeding having for its sole purpose the vacating or setting aside of the divorce decree. This, says appellant, the California courts have no power to do. He urges that the courts of one state have no jurisdiction to consider solely the validity of a divorce

decree of a sister state, and to enter a decree determining its invalidity.

It is quite true that the courts of one state have no legal right to "annul," or "vacate," or "set aside" a foreign judgment, but it is equally clear that a determination by a court that a judgment of a court of another state was rendered without jurisdiction does not have the effect of vacating the judgment or decree in the state where it was rendered. (See many cases collected 21 C.J.S. § 552, p. 858.) The power of the courts of this state to declare a foreign divorce involving one of its citizens who did not appear therein void in this state because of lack of proper residence of the plaintiff in the divorce case, is too well settled to require discussion. We do not find it necessary to decide whether the interest of the first wife in protecting her status as a married woman is such that the courts of this state could make such a determination in a case brought solely for the purpose of having the foreign decree determined to be void in this state. Whether the action of declaratory relief extends to such a determination presents a most interesting problem that is academic in this case.

The complaint for the injunction was not filed for the "sole" purpose of having the Nevada divorce decree determined to be invalid in this state. That complaint alleged facts and prayed for a form of relief that demonstrates that an actual, present dispute exists between these parties, and that the determination of the validity of the Nevada decree is only incidental to the determination of that issue—namely, the right of plaintiff to be protected in her right to the payments for support awarded her in the prior separate maintenance action. Thus, in a most real sense, the Nevada decree was not under attack "solely and directly" for the purpose of having its invalidity adjudged. That issue was but incidentally involved in connection with protecting her right to support. In view of defendant's default, the allegations of the complaint must be accepted as true, including the allegation that after the decree of separate maintenance was entered in February, 1946, defendant failed to pay one cent upon that award.

There seems to be no California case directly in point on the precise issue here involved, but plaintiff refers to two New York cases where the issue has been discussed. The first of these is *Richman* v. *Richman,* 148 Misc. 387 [266 N.Y.S. 513]. In this case the wife brought an action against her husband for a separation, and also for an injunction to

restrain him from procuring a Mexican divorce and remarrying until the further order of the court. The wife had a prior support award, and the husband was in arrears in his payments. It is not clear from the opinion whether the Mexican divorce had been secured prior to commencement of the injunction proceeding. Among other things the court stated (p. 514 [266 N.Y.S.]) :

"Assuming that such decree of divorce has been obtained, it is in no wise binding upon this plaintiff. The plaintiff has never submitted to the jurisdiction of the Mexican court and has never been personally served with process and has never appeared in said action.

"If this alleged decree of absolute divorce has become final and the action instituted by defendant therefor has terminated, then the order prayed for enjoining such action will be of no avail. Plaintiff contends that the said decree has not become final, and has not abandoned this portion of her prayer for relief.

"There remains, however, the serious question of whether or not this defendant should be restrained from going through the formality of a marriage with a person other than the plaintiff"

The court then discussed the case of *Baumann* v *Baumann*, 250 N.Y. 382 [165 N.E. 819], where a husband secured a Yucatan divorce and remarried, and thereafter the wife attempted to enjoin him from representing that he was married to his second wife. The first wife had received a $25,000 award in a property settlement, and the husband was not in arrears in payments. The Court of Appeals held the Yucatan divorce null and void, the second marriage invalid, and affirmed a declaratory judgment that the first wife was still married to the defendant, but, by a divided court, held that the injunctive relief was beyond the jurisdiction of the court. In distinguishing this case, the court, in the Richman case, stated (p. 515 [266 N.Y.S.]) :

"The instant case is readily distinguishable from the Baumann case. There the plaintiff and defendant entered into an agreement of separation, which agreement secured to plaintiff $25,000 a year. The said declaratory judgment defined her matrimonial status and protected her property right. . . . This plaintiff has not been secured of support. In fact, this defendant is now in arrears in his alimony. . . . If defendant is not now enjoined from going through a cere-

mony of marriage with a person other than the plaintiff, even though such marriage must be held illegal, plaintiff may suffer a direct financial damage. While the act of this defendant and a woman other than the plaintiff living together and representing themselves as husband and wife may not in itself constitute a legal wrong which infringes a substantial right of the plaintiff, such action resulting from an alleged marriage following an invalid divorce may, and probably will, require the defendant to expend money for the support of such woman and the support of the resultant issue of such cohabitation, when as a matter of fact, defendant in an affidavit in this proceeding asserts that he is now unable to pay his back alimony.

''I am not unmindful of the numerous decisions of our courts to the effect that equity will not by injunction restrain conduct which merely injures a person's feelings or which causes mental anguish, but here a property right is involved. By an order of this court defendant is required to pay to his wife a stated sum each week pending the determination of this action for separation. He is now in default. . . . If he is allowed to go through a ceremony, even though it cannot result in a legal marriage, he will thereby assume an additional financial burden, to the detriment of this plaintiff.

''We are not endeavoring to remedy a social evil or a moral wrong by injunction. That any marriage based on this Mexican divorce would be illegal must be conceded, but if by reason of an alleged marriage ceremony the defendant, now in default of alimony, becomes liable for the support and maintenance of an alleged wife, a financial damage to his wife must necessarily result.

''A court of equity in a proper case may restrain persons within its jurisdiction from proceeding in matrimonial actions in other states. . . . In such cases the applicant must show good equitable grounds, or the injunction will not issue. The court in the Greenberg case [218 App.Div. 104 (218 N.Y.S. 87)] based the relief upon the fact that 'there are many conceivable uses to which such a judgment of divorce could be put, causing plaintiff expense, litigation, worry, annoyance and misrepresentation.' . . .

''The prayer of the plaintiff to enjoin the defendant from attempting to contract a marriage is not for the purpose of assuring plaintiff of her own matrimonial status, but to prevent a threatened legal wrong involving property rights.

. . . Nevertheless, under the circumstances here presented, it would seem that this defendant should be enjoined from assuming under color of an invalid decree of a foreign jurisdiction an additional obligation at a time when he admits that he is unable to pay the alimony awarded by the court.''

In Gold v. Gold, 158 Misc. 570 [287 N.Y.S. 217], a complaint alleged that the defendant husband had procured an invalid New Jersey divorce and remarried another woman. It prayed that the ''second'' wife be restrained from using the husband's name, and that the husband be restrained from expending money for the support of the second wife, it being alleged that the husband was in arrears in his payments due plaintiff. It was held that the complaint stated a cause of action. The court again distinguished the Baumann case on the ground that in the Gold case ''a distinct property right is involved.'' (P. 219 [287 N.Y.S.].) On the same page the court stated:

''A court of equity will not award relief by injunction except where some legal wrong has been done or is threatened and where there exists in the moving party some substantial legal right to be protected, but here the plaintiff has a legal right, that is, the right to support and maintenance by her husband, and it would seem that such right is entitled to the protection of the court. A legal wrong has been done and threatens to continue. To preserve her rights she seeks injunctive relief. In the circumstances, if she is enabled to prove the allegations of her amended complaint, she is entitled to such relief.

''It was pointed out in the Baumann case that equity cannot by injunction restrain conduct which merely injures a person's feelings and causes mental anguish and that the law does not remedy all social evils or moral wrongs, but in the Baumann case the complaint did not allege, as is here alleged, that the plaintiff's property rights were affected or endangered by the conduct of the defendants. The complaint in this action sets forth that the acts attempted to be enjoined constitute legal wrongs which invade the legal rights of the plaintiff.''

Defendant, while recognizing that the above two cases are directly in point, contends that they no longer are the law of New York. It is urged that at the time they were decided the courts of New York had announced the policy that a foreign divorce on substituted service against a New York citizen would be held void, regardless of whether the person

procuring the divorce had acquired, in good faith, a legal domicile in the foreign state. It is contended that the case of *Matter of Holmes*, 291 N.Y. 261 [52 N.E.2d 424, 150 A.L.R. 447], "changed" the New York law in this respect. All that that case held was that under the "first" Williams case (*William v. North Carolina*, 317 U.S. 287 [63 S.Ct. 207, 87 L.Ed. 279, 143 A.L.R. 1273]) the New York courts, under the full faith and credit clause, must give full faith and credit to a Nevada divorce gained on substituted service in the absence of evidence that the Nevada court had no jurisdiction. That is all that the Holmes case decided. The whole tenor of the decision is that if there had been evidence of lack of jurisdiction of the Nevada court, the New York court would not enforce the Nevada decree. The Holmes' case in no way discussed, because the issue was not involved, any of the main problems involved in the Richman and Gold cases. The reasoning of those cases that the first wife may secure an injunction in protection of her previously awarded support payments is sound, and should be followed.

Apparently, under New York law, it was necessary to find that a property right was in jeopardy before an injunction would issue, and, in the Richman and Gold cases such was found in the adverse affect on the prior support award of the second invalid marriage. It should be pointed out that in California there is no such rigid requirement that a property right must be adversely affected before an injunction will issue. Whatever confusion may have existed in the prior cases was set at rest in the well-reasoned and unanimous decision of the Supreme Court in *Orloff v. Los Angeles Turf Club*, 30 Cal.2d 110 [180 P.2d 321, 171 A.L.R. 913]. In that case the court held that equity will protect by injunction not only property rights, but, in a proper case, personal rights. This furnishes an additional reason why the injunction properly issued in the instant case, particularly when the direct and important interest of the plaintiff in preserving her status as the wife of defendant is considered.

Defendant next contends that the granting of injunctive relief prohibiting him from marrying Juliana Sesenna, or anyone, was improper for the asserted reason that equity has no power to enjoin the commission of a criminal act— bigamy in this case. That is undoubtedly the general rule. (See Civ. Code, § 3369; *International etc. Workers v. Landowitz*, 20 Cal.2d 418 [126 P.2d 609]; *Perrin v. Mountain View*

*Mausoleum Assn.*, 206 Cal. 669 [275 P. 787]; *Monterey Club* v. *Superior Court*, 48 Cal.App.2d 131 [119 P.2d 349]; 4 Pomeroy, Equity Jurisprudence (5th ed.), § 1347, p. 949.) As stated in 14 California Jurisprudence, section 25, page 211, citing many cases: "It is beyond controversy that equity does not interfere by injunction to prevent the mere violation of law, and that it has no jurisdiction to enjoin the commission of acts merely because such acts when committed will constitute a crime. But it is equally well settled that the writ may issue to restrain the commission of acts which are violative of public policy—which . . . assail the rights of property—although such acts are crimes and punishable as such."

Defendant contends that the general rule applies here and not the exception, asserting that no property rights of plaintiff were threatened by his proposed marriage to Juliana Sesenna. This contention has been fully discussed and decided adversely to defendant in discussing the first point. It has already been held that the primary purpose of this action was to protect plaintiff's property interest in the previously awarded support decree. That this property right is an important one and entitled to full protection was dramatically illustrated by two recent decisions of the United States Supreme Court—*Estin* v. *Estin* (June 7, 1948), 334 U.S. 541 [68 S.Ct. 1213, 92 L.Ed. ——], and *Kreiger* v. *Kreiger* (June 7, 1948), 334 U.S. 555 [68 S.Ct. 1221, 92 L.Ed. ——). In those two cases it was held that even a valid Nevada divorce decree could not adversely affect the important property right involved in a prior support order of another state, where the law of the state where the support order was granted provides that the support order shall survive in such cases. If the prior support award is such an important property right that it is entitled to that protection in the face of a valid decree of divorce, it would seem obvious that it is of sufficient importance to protect it by injunction against the adverse effects of an invalid remarriage.

█ In this case the trial court has entered the default of defendant. On his motion it has refused to vacate it. In the proceeding to vacate it was proved that defendant was personally served with the complaint, summons, order to show cause, temporary restraining order and accompanying documents on June 27, 1946. He deliberately disobeyed the order of the trial court, and, in direct violation of that order,

proceeded to Nevada and there married Juliana Sesenna. Although having full notice of the hearing, he failed to appear on July 3, 1946. Judgment was entered, and became final. Over two months later defendant sought to have the judgment vacated. In that connection he averred, under oath, that he had not been served, but the process server was produced and testified to the true facts. There was no "mistake, inadvertence, surprise or excusable neglect." Insofar as the denial of the motion to vacate rested in the discretion of the trial court, far from being an abuse of discretion to deny the motion, it would have been an abuse of discretion to have granted it. In addition, as already pointed out, the complaint for an injunction stated a cause of action, and the relief granted was within the jurisdiction of the trial court.

The order denying the motion to vacate is affirmed.

Ward, J., and Bray, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 26, 1948. Carter, J., and Schauer, J., voted for a hearing.