[Civ. No. 18335.   Second Dist., Div. One.   Oct. 17, 1951.]

NEPTUNE PIER COMPANY, Appellant, v. COASTER
COMPANY (a Corporation) et al., Respondents.

Gibson, Dunn & Crutcher, Ira C. Powers, Sherman Welpton, Jr., and William F. Spaulding for Appellant.

Irving M. Smith, City Attorney (Long Beach), Joseph B. Lamb, Assistant City Attorney, Neil S. McCarthy, Cosgrove, Cramer, Diether & Rindge, John N. Cramer, Leonard A. Diether and Frank D. MacDowell for Respondents.

DORAN, J.—The controversy herein is an outgrowth of a so-called lease-franchise dated May 29, 1914, whereby respondent city of Long Beach leased certain tidelands to appellant Neptune Pier Company for a term of 35 years expiring December 1, 1948. The franchised premises had been acquired by the city under a state grant, and are described as lying 376 feet along the line of ordinary high tide and extending 600 feet southerly into the Pacific Ocean. As a part of the consideration Neptune conveyed to the city two parcels of land, namely a 396-foot strip (east and west) and 2 feet in width, along the high tide line, and a second strip conveyed for sidewalk purposes 396 feet long (east and west) and 25 feet wide, lying immediately north of a 64-foot strip owned by Neptune. The lease franchise contained no provision for renewal or extension of the term, and required Neptune to remove all structures prior to the expiration date "at its own expense and surrender the same to the City of Long Beach."

On May 7, 1914 appellant Neptune subleased a portion of said premises to the respondent Coaster Company for a similar period of 35 years, which period was later shortened so that the sublease would expire November 25, 1948, or five days before the expiration of Neptune's basic lease-franchise. Upon this subleased property the Coaster Company erected a roller coaster which was demolished in 1930, a new structure of similar nature being then constructed.

Title to the roller coaster at the expiration of the sublease is now claimed by the Neptune Company. This claim is predicated upon a sublease provision that Coaster Company "shall, at the expiration of the term herein limited, or upon sooner termination of this lease, at its option (1) turn over to (appellant) . . . the said demised premises with all structures and improvements in good and safe condition, or (2) at its own expense clear said demised premises and leave the same" in their original condition. Appellant Neptune was given a right of entry for conditions broken, but the sublease contained no express provisions relative to method, manner or time by which respondent Coaster Company was to exercise

the option. There was evidence that removal of the extensive roller coaster structure would require 75 days.

In 1944-45, it appears that sublessee Coaster Company attempted without success to negotiate some arrangement with Neptune for a renewal of the sublease at its termination in 1948 so that Coaster's investment would be protected. Coaster offered to cooperate in securing a new basic lease from the city. Failing in these efforts, Coaster, in May, 1946, wrote the city manager of Long Beach: "Coaster Company has been unable to obtain from Neptune any expression of its intention relative to applying for a new franchise lease and has therefore determined to seek a lease-franchise from the City covering the space now occupied by its operations and upon which it has expended over $250,000." Coaster proposed a payment of $20,000 to the city "providing Coaster Company has obtained the franchise and is in full possession of its improvements—the City to waive the removal of Coaster Company's improvements as required in Neptune's franchise."

Thereafter, according to appellant's brief, "The City in disregard of Plaintiff's tenancy and reversionary interest entered into a new lease with Coaster Company for the operation of the coaster for twenty-one years beginning December 1, 1948." There is evidence indicating that the city requested information from Neptune relative to the latter's intention to apply for a new franchise, but that such information was not furnished.

On July 15, 1947 the electors approved the granting of the new franchise to Coaster. A resolution was passed by the city extending the time for removal of the structure "to the date of termination of the (new) lease franchise granted to Coaster Company." Appellant claims that this was done without notice to Neptune; there is also evidence indicating that Neptune could hardly have been ignorant of what was going on in this respect.

A conspiracy between the city and Coaster "to deprive Plaintiff of its contract and property rights," and to prevent Neptune from obtaining the valuable improvements, is alleged. Coaster Company is said to have "fraudulently" written Neptune that Coaster "will at its own expense clear said demised premises," etc., whereas Coaster never intended to so remove the structure, and in fact never did remove it. It is Neptune's contention that "Upon vesting of the reversion and Coaster Company's refusal to avail itself of the provision

for removal of the structures, plaintiff (Neptune) became entitled to the exclusive possession and right of disposition of the structures.''

The trial court found that Coaster's sublease came to an end on November 25, 1948, but that ''Respondent Coaster still had the right of ingress and egress for the purpose of removing the structures it had placed on the subleased property.'' It was also found that although Coaster had hired armed guards and had thus prevented Neptune from taking possession, there was reasonable and justifiable cause to engage and maintain such guards, and that ''none of them did or performed any act or engaged in any activity that was not reasonably necessary to protect the structures and improvements on the subleased premises.'' The trial court concluded that Neptune had suffered no damage and was entitled to no relief. It is maintained by the respondents that the findings and judgment are amply sustained by the record evidence.

It is pointed out in a brief filed by the city of Long Beach that ''The City has never exercised any dominion'' over the coaster structure, and claims no interest whatever in the improvements.'' It is also noted that the city, as the owner of the property, ''had the right to re-lease it at the termination of Neptune's lease-franchise without undue or unnecessary delay or loss of income. Neptune had no priority right to be considered ahead of others. However Neptune appears to take the position that it was the city's duty to do nothing with its property, but to sit idly by and await a determination of a dispute between it and Coaster as to which owned the improvements.''

Although various decisions have been cited in support of appellant's contention that the trial court erred in its decision, such cases do no more than reiterate certain fundamental rules about which there can be no serious controversy. For example, the general rights, duties and liabilities of landlords, tenants and subtenants are well established and can hardly be questioned at this late date. It is to be noted that none of the cited cases involve a factual situation in any way comparable with that here presented.

Although, as appellant maintains, the Coaster Company possessed only the limited rights of a sublessee, it must be borne in mind that Neptune itself was a mere lessee of the city under a lease which makes no provision for renewal or extension. Without some renewal or extension, and Neptune appears to have done nothing to secure any reinstatement of its tenancy status, its tenancy rights came to an end only five

days after termination of Coaster's sublease. As noted in the city's brief, the Neptune Company possessed no "priority right" so far as relates to the granting of a new franchise-lease by the city.

As hereinbefore indicated, the fundamental question litigated at the trial and now made one of the chief issues on appeal, concerns the ownership and disposition of the structures erected by the sublessee. It is apparent that this coaster structure was primarily valuable as a going concern, and that such value was to a very great extent dependent upon two contributing factors—namely the favorable amusement-beach location, and the long term continuance of the enterprise. The city of Long Beach by way of a franchise lease, was obviously the fountainhead of both of these elements. The Neptune Company, itself a lessee, occupied the position of a middleman. Neptune contributed nothing towards construction or maintenance of the roller coaster, and, it may be noted, apparently made no claim of ownership prior to the final controversy.

Renewal of the basic franchise at the close of Neptune's term was a matter important to both Neptune and Coaster, yet it seems that Neptune made no effort towards securing a renewal of this basic right. Under one view of the evidence it might reasonably be inferred that Neptune was primarily concerned with securing title to this valuable asset before negotiating any new arrangement with the city. Coaster, on the other hand, was determined that "The Neptune Pier Company was not going to steal the coaster," and failing to secure cooperation from Neptune, proceeded to make its own arrangement with the city of Long Beach for the purpose of protecting its large investment.

The matter of removal of the roller coaster at the expiration of the sublease was not one which could be effected in a few hours or even in a few days. There was evidence that such removal would require a period of 75 days. If it be assumed, as appellant's position seems to require, that Coaster must either have the structure removed before the expiration date of the sublease, or lose title thereto, it necessarily follows that the Coaster Company would be compelled to start such removal activities 75 days before the expiration date. Financially, then, the last two and one-half months of the sublease period would be a total loss so far as income is concerned. The sublease, however, contains no such requirement, but merely provides that "at the expiration of the term" Coaster

shall exercise its option of turning over to Neptune the structure in question, or shall "at its own expense clear said demised premises."

By notice given, the Coaster Company made a formal election to remove the structure, although as appellant states, no removal was ever made and it is questionable whether Coaster ever intended to remove it. It is at least clear that Coaster had no intention of turning over the property to Neptune. As already noted, however, the sublease was silent as to the exact method, manner or time in which Coaster was to perform. Detailed and express provisions governing such an important matter might well have been contained in the instrument. Such foresight might have rendered the present litigation unnecessary or at least have clarified the issues as to the exact rights, duties and liabilities of the various parties.

■ The alleged conspiracy between Coaster and the city, designed to defeat Neptune's right to take over the structure, was one of appellant's affirmative allegations, therefore the burden of proving such fact rested upon appellant's shoulders. The fact that Coaster had offered the city $20,000 "provided Coaster Company has obtained the franchise and is in full possession of its improvements—the city to waive removal of . . . improvements as required in Neptune's franchise," can hardly be said to establish such a conspiracy, standing alone. Whether a conspiracy did exist, involving an unlawful act or a lawful act done in an unlawful manner, was clearly a question of fact.

■ The trial court was confronted with appellant's theory that Coaster and the city had unlawfully combined to "freeze out" Neptune, and on the other hand with respondent's theory that following Neptune's noncooperation, Coaster had merely sought to protect its rights and insure future operation, by opening direct negotiations with the city. Certainly the record discloses evidence from which the trial court could draw the latter conclusion.

■ The record also affords substantial evidence in support of the trial's court's finding that Neptune had suffered no damage. In this connection the court found that "the reversionary interest of Neptune in the premises referred to in Coaster's sublease on or after November 26, 1948, was of no market value," and that Neptune's nearby fee property "was not damaged or depreciated in value by virtue of the maintenance and operation of the structures and improvements referred to in Coaster's sublease on November 26, 1948,

or at any time thereafter." The trial court also noted that had the roller coaster been turned over by Coaster, Neptune, under the basic lease with the city would have been obliged to remove such structure at great expense, thus rendering the possession of the coaster a detriment rather than a benefit to Neptune.

The most superficial examination of the voluminous record demonstrates that at almost every point, the trial court was confronted with conflicting evidence and diverse theories. Only in respect to the bare details of what finally happened is the record free from such confusion. More than 1,200 pages of testimony make it clear that the issues in question were thoroughly canvassed. While it is doubtless true that certain items of evidence may tend to support some of appellant's contentions, it is nevertheless certain that the trial court's findings against those contentions are adequately supported. Under the usual rules, the appellate court in such a situation is not empowered to weigh the evidence or enter into what amounts to a retrial of the case.

The judgment is affirmed.

White, P. J., and Drapeau, J., concurred.

A petition for a rehearing was denied November 13, 1951, and appellant's petition for a hearing by the Supreme Court was denied December 13, 1951. Schauer, J., voted for a hearing.