LILLIE, J.
 

 Appellant, Leah Lamb Poyet, sole shareholder and, after May, 1953, president of defendant Lamb Finance Company, Inc., was sued, with the corporation, by the Bank of America for recovery of $48,210.56 plus interest on a promissory note dated October 19, 1953, executed by the corporation and guaranteed by her. The bank, among other things, attached her residence. Both defendants cross-complained against the bank seeking relief from liability on the note and damages for fraud. At the trial on the merits the lower court refused defendant Poyet a jury on certain issues and directed a verdict for the bank. She appealed from the judgment but pending the appeal the judgment was satisfied by payment of $50,484.33. Thereafter, this court held she was entitled to a jury trial on all issues (145 Cal.App.2d 702); and the matter was again heard in the lower court. At the outset of the second trial defendant corporation conceded liability and dismissed its cross-complaint, leaving the only contenders the Bank of America and defendant Poyet. It is from the judgment for the bank entered on a jury verdict, she appeals. On this appeal she also seeks review of the order denying her motion for new trial.
 

 Most of her testimony has been set forth in appellant’s opening brief, but we deem it to be not material to the issues before us. Numerous witnesses testified in the case and various exhibits were received, creating a substantial factual conflict which the jury resolved in the bank’s favor, with which determination we are bound
 
 (Berniker
 
 v.
 
 Berniker,
 
 30 Cal.2d 439 [182 P.2d 557];
 
 Gates
 
 v.
 
 McKinnon,
 
 18 Cal.2d 179 [114 P.2d 576]); for it is not our province to analyze or resolve conflicts in the evidence
 
 (Berger
 
 v.
 
 Steiner,
 
 72 Cal.App.2d 208 [164 P.2d 559];
 
 Estate of Bristol,
 
 23 Cal.2d 221 [143 P.2d 689]).
 

 The stricken portion of defendant Poyet’s testimony, the subject of appellant’s first claim of error, was given by her in support of her contention that she had been induced by fraud on the part of a representative of plaintiff bank to
 
 *501
 
 sign the guarantee sued upon; and it constitutes part of lengthy testimony she gave relative to her dealings with the bank, which version of the transaction the jury obviously refused to accept. Although sole shareholder, director and then vice president of Lamb Finance Company, Inc., she testified she had no business experience in financing and relied upon the corporation president, Mr. Angione, and Mr. Newton, manager of the Hollywood main office of plaintiff bank with which she was a depositor. She further testified that on August 6, 1952, not knowing the condition of the Lamb Finance Company account, she signed a guarantee on the reverse side of a promissory note for $50,000 executed by the corporation; that thereafter the corporate note was renewed several times and each time she guaranteed payment thereon believing the corporation to be in good financial condition ; and that on October 19, 1952, on the occasion of the fourth renewal of the note, she signed the same guaranteeing its payment in the sum of $48,210.56, the subject of this suit.
 

 Appellant’s first contention is that the trial court erred in striking certain of her testimony. After relating a conversation with Mr. Newton wherein he asked her to sign the guarantee on the reverse side of the note of August 6, 1952, executed by the Lamb Finance Company, she testified: “I said, ‘Mr. Newton, if I am guaranteeing with any of my personal property, I sign nothing. ’ He said ‘Mrs. Poyet, you are not.’ . . . He told me I was not liable, it was only a corporate note.” This testimony was objected to as violating the parol evidence rule, and the same was stricken on motion of plaintiff bank.
 

 The written guarantee on the reverse side of the note executed by the corporation, and signed by defendant Poyet (Exhibit 1) states in part: “. . . the undersigned endorse, guarantee, and promise to pay the note on the reverse hereof . . . and agree that the holder may proceed against the undersigned directly and independently of the maker, and that the secession of the liability of the maker for any reason . . . shall not in anywise affect the liability of the undersigned hereunder.”
 

 It is obvious from the face of the record that the stricken portion of defendant Poyet’s testimony directly contradicts the written guarantee signed by her; and that such testimony, falling squarely within the parol evidence rule, is clearly inadmissible to vary the terms of the instrument sued upon.
 

 The parol evidence rule providing, subject to several
 
 *502
 
 exceptions, that "when the terms of an agreement have been reduced to writing it is to be considered as containing all of them and there can be no evidence thereof other than the contents of the writing (Code Civ. Proc., § 1856), as applied to contracts is a rule of substantive law based on the principle that “a certain act, the act of embodying the complete terms of an agreement in a writing (the ‘integration’),
 
 becomes the contract of the parties” (Estate of Gaines,
 
 15 Cal.2d 255, 265 [100 P.2d 1055]), and no extrinsic evidence, oral or written, is competent to vary its terms or provisions
 
 (Guerin
 
 v.
 
 Kirst,
 
 33 Cal.2d 402 [202 P.2d 10, 7 A.L.R.2d 922]).
 

 However, several exceptions to the rule are stated in section 1856, Code of Civil Procedure, and relied upon by appellant is that permitting the introduction of evidence “to establish illegality or fraud.” She argues that the stricken testimony comes within the so-called “fraud” exception, citing various authorities which, although pointing up well defined rules relating to the admission of extrinsic evidence in fraud cases, are not here in point. A distinction has been made by our courts in cases in which the fraud sought to be proved consists of a false promise. They have held that if, to induce one to enter into an agreement, a party makes an independent promise without intention of performing it, this separate false promise constitutes fraud which may be proven to nullify the main agreement; but if the false promise relates to the matter covered by the main agreement and contradicts or varies the terms thereof, any evidence of the false promise directly violates the parol evidence rule and is inadmissible. The court in
 
 Newmarh
 
 v.
 
 H & H Products Mfg. Co.,
 
 128 Cal.App.2d 35 [274 P.2d 702], discussed this distinction at page 37: “Parol evidence of fraud to establish the invalidity of a written instrument induced by a promise made without any intention of performing it is only permissible in the case of a promise to do some additional act which was not covered by the terms of the contract, and such evidence is not admissible in the case of a promise directly at variance with the terms of the written instrument (citations).”
 
 (Abbott
 
 v.
 
 Stevens,
 
 133 Cal.App.2d 242 [284 P.2d 159];
 
 W. Ross Campbell Co.
 
 v.
 
 Sears, Roebuck
 
 c§
 
 Co.,
 
 136 Cal.App. 765 [29 P.2d 910];
 
 Shaw
 
 v.
 
 McCaslin,
 
 50 Cal.App.2d 467 [123 P.2d 102].)
 

 The false promise or representation in the instant case is clearly one relating to the identical matter covered by the main agreement and which contradicts its very terms. The main agreement is the written guarantee signed by defendant
 

 
 *503
 
 Poyet on the reverse side of the promissory note; and the oral false promise that no personal liability would attach to her as a result of the transaction, far from constituting some additional act not covered by the terms of the guarantee, covers the very matter of the main agreement; thus her testimony relating to the alleged false promise which contradicted the plain language of the guarantee, was property stricken as incompetent under the parol evidence rule. The application of the rule is clear, particularly in promissory note cases, and controlling here is
 
 Shyvers
 
 v.
 
 Mitchell,
 
 133 Cal.App.2d 569 [284 P.2d 826], in which a like contention was made that a guarantee on a note was void because its execution was induced by the fraudulent representation of one Partridge of the bank that the signer would never be liable thereunder. Holding that evidence of this representation violated the parol evidence rule, the court stated at page 573: “While it may be true that ‘where the execution of a contract has been induced by a promise made without any intention of performing it, this constitutes such fraud in obtaining the contract that it may be declared null and void’
 
 (Cobbs
 
 v.
 
 Cobbs,
 
 53 Cal.App.2d 780, 783 [128 P.2d 373]), yet when that promise which, because it is squarely against the terms of the writing, does by its very nature, if counted on, supersede that writing, then, even though it be made with intent on the part of the promisor that the promise will not be kept, evidence of it can neither be received nor counted upon to support a finding of fraud
 
 (Simmons
 
 v.
 
 California Institute of Technology,
 
 34 Cal.2d 264, 274 [209 P.2d 581].) ” The court therein placed reliance on
 
 Bank of America
 
 v.
 
 Pendergrass,
 
 4 Cal.2d 258 [48 P.2d 659], holding that, in a suit on a
 
 note
 
 containing an unconditional promise to pay on demand, the defense of fraud arising out of a promise that no payment would be exacted during a particular year, was not available. Holding evidence of such promise to be in direct contravention of the written instrument and in violation of the parol evidence rule, the court stated at page 263: “Our conception of the rule which permits parol evidence of fraud to establish the invalidity of the instrument is that it must establish some independent fact or representations, some fraud in the procurement of the instrument, or some breach of confidence concerning its use, and not a promise directly at variance with the promise in writing. ’ ’
 

 Appellant’s second claim of error relates to the reopening of the case after all parties had rested and the reading of a stipulation to the jury. Her complaint that the
 
 *504
 
 trial court permitted plaintiff to reopen the case and present new evidence without according to her the “right to explain the situation and rebut new evidence” finds no support in the record before us, and is predicated upon a complete disregard of the true situation and, in particular, the acts and conduct of her own counsel.
 

 When the motion was made, the state of the evidence was such that, through her own testimony, defendant Poyet, on the issue of damages, had represented to the jury that as a result of the bank’s attachment of her residence the house was foreclosed and sold at foreclosure sale for $37,000, $15,000 less than the true value of the property. Prior evidence offered by the bank disclosed that certain funds of the Lamb Finance Company, Inc., had been transferred to Universal Underwriters, a corporation owned by defendant Poyet’s husband, of which she was executive vice president. The motion to reopen was made outside the presence of the jury, and preliminarily plaintiff’s counsel, Mr. Fabian, stated that only on the last court day was there supplied to him the address of the residence defendant Poyet claimed had been foreclosed. In support of his motion he made an offer of proof based upon the escrow files of the Escrow Title Insurance Company then in court under subpoena, that there had never been a foreclosure of the premises as testified by defendant Poyet, but on the contrary the house had been sold through escrow by Universal Underwriters to a Mr. and Mrs. Becker. In opposing the motion, Mr. Jacobs, attorney for defendant Poyet, objected: “. . . Certainly, it does not give me an opportunity to find out anything about it if this is opened now. If the evidence had been put in, I would have had an opportunity to refute it. I certainly have no opportunity at the present moment insofar as the question of foreclosure is concerned.” Reminded by the court that defendant Poyet herself testified that as a result of the attachment her property had been foreclosed, the court declared its intention to grant the motion. Asked by Mr. Jacobs if he would have an opportunity to find out additional facts, the court granted the motion and gave him an opportunity to examine the records then in court and talk to his client, which he did. When it reconvened Mr. Jacobs stated to the court that he had talked to defendant Poyet who explained to him that she had been unable to make payments on the deed of trust on the property and, to avoid foreclosure, one “Hutchins handled the deal.” He further advised the court “(I)f they (plaintiff) come up here with
 
 *505
 
 this now and say this was an out and out sale, I am stuck with it, and this man Hutchins says if we call him and get him up here, he can tell exactly what happened about it.” After the court commented that it opened up a collateral issue that may take a day or two to try, Mr. Fabian, plaintiff’s counsel, interposed that he, too, had just talked to Hutchins. Mr. Jacobs immediately replied “I can enter into this stipulation. It would be a basis of what she lost on the foreclosure. That would be the main question, and I would be willing to eliminate the difference between that and the sale, rather than take a day or two, because I have another matter now set tomorrow. I don’t like to do it.” The court then stated: “What would it be, then, . . . ,” and immediately in the presence of both counsel composed a stipulation to the effect that all testimony of defendant Poyet relating to the foreclosure of her home and any damage as the result thereof be stricken and the jury instructed to disregard it, to which both Mr. Fabian and Mr. Jacobs then responded: “So stipulated.” Shortly thereafter, without objection, the court read the stipulation to the jury.
 

 Having in mind the state of the evidence at the time the motion was made, the reason the proposed evidence had not before been offered, and the fact that no additional evidence of any nature was received, we are unable to say that the lower court abused its discretion in granting the motion.
 
 (Badover
 
 v.
 
 Guaranty Trust etc. Bank,
 
 186 Cal. 775 [200 P. 638];
 
 Johnston
 
 v.
 
 Johnson,
 
 127 Cal.App.2d 464 [274 P.2d 1].) Although technically the ease was originally reopened for the taking of additional evidence, that which was ultimately offered did not constitute evidence in the case. The sole result was voluntary elimination, by defendant Poyet, of the element of damage based on the alleged foreclosure loss from the consideration of the jury. No testimony or evidence of any kind or nature was received by the trier of the fact after the case was reopened. The offer of proof was made outside of the presence of the jury.
 

 Appellant represents to this court that when the case was reopened she was deprived of the opportunity to present rebutting evidence; but such a claim finds no support in the record. Although it is true that before he examined the escrow files and talked to his client, defense counsel, in opposing the motion, objected that he would have no opportunity to rebut whatever evidence plaintiff intended to offer, he at no time either suggested, or asked for, a continuance. After the
 
 *506
 
 motion was granted and he had examined the files and talked to defendant Poyet, not only did defense counsel not ask for a continuance or request permission to put on further testimony or offer additional evidence, but in what appears to us to be a deliberate effort to block the receipt of the proof plaintiff bank would otherwise have offered and prevent the jury from hearing the same, he suggested a stipulation to withdraw defendant’s claim for damage relative to the alleged foreclosure loss eliminating the issue from the consideration of the jury. Nor was evidence of any nature received after the case was reopened, which defendant could have rebutted.
 

 Contrary to her claim that she was denied permission to put Hutchins on the stand as her witness, the record clearly discloses that although her counsel advised the court to what Hutchins would be able to testify if he were called, he at no time requested permission or time within which, or even his intention, to produce Hutchins or any other witness or offer any additional evidence. Nor did the trial judge refuse him any opportunity to do so, or preclude the same, although he observed without further comment that the matter would open up a collateral issue that may take a day to try. It was after plaintiff’s counsel advised the court he, too, had talked to Hutchins the day before, that defense counsel immediately offered the stipulation to dispose of the issue involved.
 

 The actual reason defense counsel suggested, offered and entered into the stipulation is not expressed in the record, but we deem it reasonable to infer from his statements made after examination of the escrow files and talking to his client, that he suggested removing the foreclosure damage issue from the consideration of the jury and eliminated the taking of further testimony thereon, proposed a stipulation to that effect, and then freely and voluntarily entered into the same, either because it was then obvious to him that further evidence on the issue would be damaging to defendant’s entire case as casting doubt on her testimony that there had been a foreclosure and proving it was her own corporation, Universal Underwriters, that had sold the property through escrow; or he realized defendant Poyet would be unable to rebut the evidence the escrow file disclosed or satisfactorily explain the same; or he did not think it worth the time to devote another day to the matter inasmuch as he personally had another case set for trial the next day. Whatever his reason, the stipulation was nevertheless one originally suggested and invited by him and voluntarily entered into as the most convenient way
 
 *507
 
 to dispose of the matter at the time. That further reflection disclosed an error in his judgment in this regard provides no justification for a reversal on that ground. Invited by her counsel, appellant is not now in a position to complain of the manner in which the issue was disposed
 
 (Lynch
 
 v.
 
 Bird-well,
 
 44 Cal.2d 839 [285 P.2d 919];
 
 Jentick
 
 v.
 
 Pacific Gas & Elec. Co.,
 
 18 Cal.2d 117 [114 P.2d 343]), and the stipulation having been freely and voluntarily entered into, is binding on her
 
 (.Palmer
 
 v.
 
 City of Long Beach,
 
 33 Cal.2d 134 [199 P.2d 952];
 
 City of Los Angeles
 
 v.
 
 Cole,
 
 28 Cal.2d 509 [170 P.2d 928]).
 

 Appellant further complains that because the stipulation removed from the case the issue of damage due to foreclosure loss, and the jury was so instructed, it must have concluded that defendant’s testimony was not true, and for this reason alone the jury rendered a verdict against her. Defendant Poyet at no time interposed an objection to the stipulation after it was composed by the trial court, voluntarily entered into the same, and at no time either before or after it was read to the jury objected thereto. Thus, she is not now in any position to complain of any effect the stipulation might have had on the deliberations of the jury. However, we .can only assume that it followed all the instructions the trial court gave in the case
 
 (Redo Y Cia
 
 v.
 
 First National Bank,
 
 200 Cal. 161 [252 P. 587];
 
 Koehig
 
 v.
 
 Southern Pacific Co.,
 
 108 Cal. 235 [41 P. 469]), including the instruction to ignore the stricken evidence
 
 (People
 
 v.
 
 Letourneau,
 
 34 Cal.2d 478 [211 P.2d 865];
 
 Millstein
 
 v.
 
 Spektor,
 
 153 Cal.App.2d 125 [314 P.2d 184]).
 

 Although no appeal lies from the trial court’s order denying defendant’s motion for new trial, the ruling may be reviewed on the appeal from the judgment
 
 (Hamasaki
 
 v.
 
 Flotho,
 
 39 Cal.2d 602 [248 P.2d 910]). In reviewing the same, however, we find no abuse of the lower court’s discretion in making the order.
 

 Defendant’s motion was based on all statutory grounds in support of which she filed several lengthy affidavits. In opposition thereto plaintiff submitted an affidavit to which were attached all documents relating to the sale of the property in question through escrow. In the lower court she advanced the same arguments now presented to this court, particularly with reference to the reopening of her case. On this point they are duplications of those urged in connection with her last contention. She argues mainly that the jury
 
 *508
 
 did not have the full picture of the foreclosure transaction and she could have produced deeds, deeds of trust, and other papers and records in relation to the sale to support her claim of foreclosure had the trial court not precluded her from doing so. This argument, as the others submitted by her, is predicated on the erroneous theory that the lower court refused to allow her to “rebut and disprove the matter in question’’ and permitted “secondary proof of an escrow’’ offered by plaintiff after the ease was reopened. We have heretofore pointed out that the record supports neither her claim that any proof, secondary or otherwise, was offered, nor her contention that she was precluded from rebutting or disproving the same.
 

 Appellant seems to lose sight of the fact that since one of the elements of her alleged damage was loss due to foreclosure the burden was upon her to prove not only any loss sustained, but that a foreclosure actually occurred. It was not incumbent upon the plaintiff to prove any of the elements of defendant’s alleged damage
 
 (Valenti
 
 v.
 
 Sierra Ry. Co.,
 
 151 Cal. 534 [91 P. 481];
 
 Neptune Pier Co.
 
 v.
 
 Coaster Co.,
 
 106 Cal.App.2d 817 [236 P.2d 386]). The affidavits in support of her motion make it clear that the documents appellant now claims she could have produced at the trial were at all times known to her and available for her use, and it would appear to us if they are what she claims them to be that they might well have been a proper part of proof of her damage. That she did not produce them either because she did not feel that they were necessary to her cause, or because she believed the plaintiff should have done so, or because she now sees that she proceeded unwisely by entering into the stipulation, was no justification for the trial court to grant her a new trial. She could have refused to enter into the stipulation and requested a continuance to give her an opportunity to produce these records; or even after entering into the stipulation she could have made objection and asked to be relieved therefrom. Instead, represented by competent counsel in whom she must have had confidence, for he still appears as her attorney of record on this appeal, she took her chance on the outcome of the trial, and, finding it to be adverse to her, fell back on the motion for new trial. We believe she has waived her right in this connection and is now in no position to complain that the trial court erred in refusing to grant her another opportunity
 
 (Zibbell
 
 v.
 
 Southern Pac. Co.,
 
 160 Cal. 237 [116 P.
 
 *509
 
 513];
 
 Sepulveda
 
 v.
 
 Ishimaru,
 
 149 Cal.App.2d 543 [308 P.2d 809]).
 

 For the foregoing reasons the judgment is affirmed.
 

 Fourt, Acting P. J., and Scott (Robert H.), J. pro tem.,
 
 *
 
 concurred.
 

 *
 

 Assigned by Chairman of Judicial Council.