[Civ. No. 32204.   Second Dist., Div. One.   Nov. 27, 1968.]

ROSALIE L. MORTON, Plaintiff and Appellant, v. BERNARD J. LOVEMAN, Defendant and Respondent.

Harry Gold for Plaintiff and Appellant.

Simon, Sheridan, Murphy, Thornton & Medvene and Robert E. Hinerfeld for Defendant and Respondent.

LILLIE, J.—A demurrer, both general and special, to plaintiff's amended complaint having been sustained and plaintiff thereafter having elected to stand on her pleading, the demurrer was sustained without leave to amend. The appeal is from the judgment ("order") dismissing the action; an additional appeal from "the sustaining of Demurrer without leave to amend" is dismissed. (*Beazell* v. *Schrader*, 59 Cal.2d 577, 580 [30 Cal.Rptr. 534, 381 P.2d 390].)

The parties were formerly husband and wife, their marriage having been dissolved by a final judgment entered September 20, 1965; the judgment finalized an earlier amended interlocutory decree which granted both spouses a divorce and disposed of the community property after a contested trial lasting several days.[1] This is an independent action in equity to set aside the property provisions of the above decrees; it is contended by plaintiff that the complaint as amended sets forth sufficient facts to bring her within the rule that "where a husband conceals from his wife the existence of community assets whether in the course of negotiations for a property settlement agreement or in the course of litigating their claims to community property, such conduct is violative of his fiduciary duty to account to her for the community property, deprives her of an opportunity to fully present her case, constitutes extrinsic fraud and warrants equitable relief from a judgment." (*Orlando* v. *Orlando*, 243 Cal.App.2d 248, 253 [52 Cal.Rptr. 142].)

The amended pleading contains an introductory allegation that at all pertinent times a confidential relationship existed between the parties who were then husband and wife, specifically, that defendant "occupied a position of trust with respect to the community assets of the plaintiff and her then husband, Bernard J. Lovement." [*sic*] Reference is then made to the various items of community property, three of which were the subject of litigation in the prior action: the "Clover Street realty" formerly occupied by an industrial laundry business owned and operated by the parties, the laundry business itself known as Eagle Overall Cleaning Company, and 50 percent of the capital stock of a related business known as "Active Shop Towel Service, Inc." With respect to

---

[1]Since plaintiff's pleading makes reference by title and number to this former action, we are thus invited to take judicial notice of what then and there transpired (*Legg* v. *Mutual Benefit Health & Acc. Assn.*, 184 Cal.App.2d 482, 488 [7 Cal.Rptr. 595]); also portions of the relevant papers and proceedings in said action are included in the record on this appeal.

the above three items, it is alleged that their true value was not disclosed and, with respect to the third item (the towel service corporation), that defendant falsely testified that he had no opinion as to its value and compounded such false testimony by producing the affidavit of one Lewis that the corporation was insolvent. Although her original complaint did not do so, the amended pleading also refers to other items of community property the existence of which were never disclosed by defendant at the prior trial; although no value is assigned thereto, they are said to consist of a postal savings account, "one or more bank accounts in his own name and in other names" and "varied and sundry gifts of the community property to persons presently unknown" all without the knowledge and consent of plaintiff.

As to the first three properties, it is alleged that the representations of defendant as to value or lack of value were false, and known by him to be false, and made with intent to deceive both plaintiff and the court and to induce the latter to render findings resulting in an inequitable division of the community assets. As to the remaining assets, undisclosed by defendant upon the trial, similar allegations of fraud (in the nature of fraudulent concealment) are set forth with similar asserted results. The inequitable division above asserted appears from the following additional allegations: Defendant was awarded the first three items of property, above referred to, as his one-half share of the community property—such being the disposition of the parties' joint assets which were found by the court to have a total net value of $188,631.96. Contrary to such finding, albeit on information and belief, it is alleged that the property awarded to defendant alone exceeded $1,000,000. Thus, while the court, due to defendant's fraud, found all such three items to have a total value of approximately $200,000 (less encumbrances), shortly after entry of the final decree the laundry business was sold for $400,000, $75,000 thereof representing the sales price of Active Towel Service (previously found by the trial court to have no value) ; too, the Clover Street property was sold for a sum in excess of the value given it by the trial court (although the sales price is not furnished) as a result of pending condemnation proceedings the imminence of which defendant failed to disclose to plaintiff. Also unaccounted for are rents, issues and profits from all items of community property (including the three given defendant) which assertedly aggregate $100,000.

The prayer is the customary one in such matters, namely, for a decree impressing a trust on the subject properties, an order of reconveyance and damages representing one-half of the true and actual value of the community assets.

█ Since the complaint as amended makes specific reference to the prior divorce action by name and case number, and in effect seeks to make a collateral attack upon the judgment therein, it was proper for the trial court to take judicial notice of the records therein (*Watson* v. *Los Altos School Dist.*, 149 Cal.App.2d 768 [308 P.2d 872]); too, such former proceedings were further reflected by true copies of the relevant portions thereof accompanying the memorandum in support of the demurrer and made a part of the instant record.

█ In *Watson,* the court declared: ''The rule is well settled that a complaint otherwise good on its face is nevertheless subject to demurrer when facts judicially noticed render it defective. As pointed out in 2 Witkin, California Procedure, page 1185: 'The theory is that the pleader should not be allowed to by-pass a demurrer by suppressing facts which the court will judicially notice. The principle is that of *truthful pleading,* and is applied for the same reason as in the similar situation of pleaded exhibits which contradict allegations.' '' (Pp. 771-772.) Several vital facts appear to have been suppressed in the subject pleading—at least no mention is made thereof: Plaintiff throughout such contested action was represented by competent counsel; she had the services of a certified public accountant who rendered extensive investigatory services; she unsuccessfully moved for a new trial; she moved for and obtained an amendment of the interlocutory judgment; she stipulated through trial counsel that she would waive her right to appeal as well as her right to relief under section 473, Code of Civil Procedure; despite such stipulation, after having applied for a final judgment of divorce, she filed a notice of appeal from such judgment less than six weeks after its entry; two and one-half weeks later she formally abandoned that appeal; no reason is given for her failure to file the present independent action until 13 months after abandoning her appeal even though, as pointed out by defendant, plaintiff became a member of the State Bar shortly after the prior trial was concluded.

█ All of the above omissions become significant in light of the settled principle that endless litigation is not favored; accordingly, ''when parties have once submitted a matter, or have had the opportunity of submitting it, for

investigation and determination, and when they have exhausted every means for reviewing such determination in the same proceeding, it must be regarded as final and conclusive, unless it can be shown . . . that the prevailing party, by some extrinsic or collateral fraud, has prevented a fair submission of the controversy." (*Pico* v. *Cohn*, 91 Cal. 129, 133 [25 P. 970, 27 P. 537, 25 Am.St.Rep. 159, 13 L.R.A. 336].) In this regard it has also been stated that there is no "simple or infallible formula to determine whether in a given case the facts surrounding the fraud or mistake warrant equitable relief from a judgment." (*Jorgensen* v. *Jorgensen*, 32 Cal.2d 13, 19 [193 P.2d 728].) Each case, the *Jorgensen* court goes to say, requires an examination of the facts "in the light of the policy that a party who failed to assemble all his evidence at the trial should not be privileged to relitigate a case, as well as the policy permitting a party to seek relief from a judgment entered in a proceeding in which he was deprived of a fair opportunity fully to present his case." (P. 19.)

As to the first three items of property, whose existence was known but whose true value was assertedly misrepresented by defendant, contrary to plaintiff's allegations in such regard it rather clearly appears that plaintiff had ideas of her own concerning their worth which she either unavailingly submitted to the trial court for its determination or, for tactical reasons, declined to disclose. Thus, as to the Clover Street realty plaintiff testified that it was increasing in value due to its eventual condemnation by the Southern Pacific Railroad; however, she presented no expert testimony in that regard because of her belief that the property was joint tenancy in character (and not within the court's jurisdiction to assign) in view of an asserted agreement to that effect between her and her husband. As to the other two disclosed items of community property (Eagle Overall and Active Towel), plaintiff testified to certain claimed admissions by defendant that the former was worth more in 1962 (before the trial) than the price for which both operations were allegedly sold in 1966 (after the trial); she also offered corroborating testimony of the above admissions. Furthermore, she produced a certified public accountant as a witness to the financial condition of both companies and endeavored unsuccessfully to qualify another witness as an expert on the value of an industrial laundry business. This is, therefore, not a situation as found in *Orlando* v. *Orlando, supra,* 243 Cal. App.2d 248, relied on by plaintiff, where the wife produced evidence that her husband had falsely testified as to the non-

existence of certain community property. ■ Applicable here is the following observation from *Clark* v. *Clark*, 195 Cal.App.2d 373, 381 [15 Cal.Rptr. 863] : "Judgments between those standing in a fiduciary capacity to each other should be based upon revelation to each other of *the basic existence* of the rem sought to be litigated. If that existence is revealed and title litigated, then the judgment is, in truth, the act of a court in which each party has had a chance to speak on his own behalf on *all* issues." (Italics added.)

■ We come now to the second category of community property items which, the amended complaint alleges, were not disclosed by defendant. As for the first of such items, and again contrary to plaintiff's allegations, it clearly appears that the existence of certain savings accounts was before the court during the divorce trial, although the issue of their existence was not forthcoming until the hearing of plaintiff's motion for new trial upon the ground, among others, of newly discovered evidence. Such motion having been denied, it is now contended that since "a denial of motion for new trial is not an appealable order . . . appellant is now, in the present fraud action, asking for the court to make a determination in this matter." ■ But it is settled that although no appeal lies from an order denying a new trial, the ruling may be reviewed on this appeal from the judgment. (*Bank of America* v. *Lamb Finance Co.*, 179 Cal.App.2d 498, 507 [3 Cal.Rptr. 877].) This sort of erroneous reasoning permeates plaintiff's entire argument; thus, although plaintiff does not of course say so, similar review could have been sought from other determinations of the trial court presently challenged in this independent equity action.

■ There remain for consideration two other items of property, likewise alleged to have been concealed by defendant: Various bank accounts in defendant's name and certain gifts made by him to persons unnamed. Again it definitely appears that the existence of at least one of the above items, his bank accounts, had been explored and was before the court on the motion for new trial.[2] The above notwithstanding, defendant was compelled to demur specially to the allegations relating to such accounts for failure to list names and locations of the pertinent banking institutions, the amounts in such accounts and the date upon which plaintiff was first

---

[2] "MR. ROSS [Plaintiff's Counsel]: The Court will recall that Mr. Loveman was asked about his assets and about bank accounts and deposits, savings accounts and so on, and at the close of his testimony, he said that that was it."

advised of the "existence of the one or more bank accounts." ▮ "The general rule is that a complaint for fraud must allege the facts constituting the fraud with particularity, general allegations being insufficient. [Citations.]" (*Sides* v. *Sides*, 119 Cal.App.2d 349, 352 [259 P.2d 708].) Too, even regardless of the existence of a fiduciary relationship one who is accused of fraud is entitled to be informed of the charge by specific averments which may enable him to refute the charge and adequately present his defense. (*Donze* v. *Donze*, 88 Cal.App. 769, 774 [264 P. 294].) The same rules necessarily apply to the alleged gifts by defendant to certain donees whose identities remain undisclosed. The portions of the amended pleading above discussed being specially demurrable, the ruling below was correctly rendered.

The judgment ("order") dismissing the action is affirmed.

Wood, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied December 16, 1968, and appellant's petition for a hearing by the Supreme Court was denied January 22, 1969.