[Civ. No. 15211.   First Dist., Div. Two.   Sept. 14, 1953.]

LILLIAN R. DANDINI, Respondent, v. A. O. DANDINI et al., Appellants.

Frisbie & Hoogs, Leo R. Friedman, Eugene K. Sturgis, Sturgis, Den-Dulk, Douglass & Henes and Kroninger & Zographon for Appellants.

Johnson, Harmon & Henderson for Respondent.

DOOLING, J.—The defendants appeal from a judgment in favor of the plaintiff. Plaintiff is the wife of defendant A. O. Dandini and secured a decree for separate maintenance against him in 1946. By the terms of that decree plaintiff herein was awarded all of the community property then disclosed to the court and A. O. Dandini was ordered to pay her $150 per month.

The basis of this action, count two thereof, on which the judgment is rendered is that A. O. Dandini and the defendants Sesenna conspired to defraud plaintiff of her interest in certain community property and to conceal from plaintiff and the court in the separate maintenance action the fact of the existence of such property. The basic facts will be disclosed in the discussion of the appeals of the several parties.

### The Appeal of Dandini and The Sesennas

Three defendants Sesenna are involved. Oreste and Rose, husband and wife, and Juliana, their daughter. The judgment against these defendants is for $2,650, the amount received from the sale of two parcels of real property by The Montreal Corporation at a time when the Sesennas controlled that corporation.

In 1936 appellant Dandini caused the formation of The Montreal Corporation to deal in real estate. Fifteen thousand shares were authorized to be issued at $1.00 per share. Dandini paid $2,300 to the corporation for 2,300 shares of its stock and the corporation purchased a parcel of real property for which it paid $2,300. In 1938 one Scarf who held a contract to purchase the unissued shares of the corporation, as agent for Dandini, assigned this agreement to Oreste Sesenna. Oreste testified that in 1938 he bought the 2,300 shares held by Dandini and paid Dandini $1,000 in 1938 and $1,000 in 1939, both payments in cash. Dandini had a contract with the corporation to act as its agent in the purchase and sale of its properties for 50 per cent of the profit. This arrangement was continued after the acquisition of its stock by Oreste Sesenna until 1942 when the arrangement was terminated and $200 was paid to Dandini for a full release of any and all liabilities. In 1942 the Sesennas purchased the additional unissued stock of the corporation at $1.00 per share. A series of checks for amounts of $1,000 and less each were drawn by Rose Sesenna, on an account in which there was never more than slightly over $1,000, on deposit, and delivered to the corporation. In turn the corporation gave a series of checks

to Rose Sesenna for the purchase from her of two parcels of unimproved realty. Thus by what the parties designate as a "round robin" transaction Mrs. Sesenna appeared to pay the corporation over $12,000 in cash, when in fact $1,000 and lesser amounts were being shuttled back and forth between the bank accounts of the corporation and Mrs. Sesenna.

Juliana Sesenna, who was secretary of The Montreal Corporation during most of the period while the Sesennas controlled that corporation and who personally handled the sale of one of the properties involved, entered into a marriage ceremony with Dandini in Nevada, where the two are now living as husband and wife, in defiance of an injunctive order of the California superior court which held that the Nevada decree of divorce secured by Dandini from plaintiff was invalid. (See *Dandini* v. *Dandini,* 86 Cal.App.2d 478 [195 P.2d 871].)

In the separate maintenance action Oreste and Rose Sesenna were interrogated about their business dealings with Dandini and failed to disclose the purchase of The Montreal Corporation from him or any other fact connected with that transaction.

The trial court found that Dandini and the Sesennas had conspired together through the device of The Montreal Corporation to conceal the fact that Dandini was acquiring properties in the name of the corporation which in fact were the community property of the Dandinis. Appellants claim that this finding is not supported by the evidence.

Fraud and conspiracy are not generally practiced in the open light of day and for that reason are not ordinarily susceptible of direct proof but must be spelled out from circumstantial evidence. "In cases of conspiracy to defraud it is not to be expected that direct evidence of the conspiracy can be secured, because such evidence could usually only be secured in the event one of the conspirators confessed. The jury may infer the conspiracy from all the circumstances, and if the inference is a reasonable one it will not be disturbed on appeal." (*Johnstone* v. *Morris,* 210 Cal. 580, 590 [292 P. 970] ; *Beeman* v. *Richardson,* 185 Cal. 280, 282 [196 P. 774] ; *Revert* v. *Hesse,* 184 Cal. 295, 301 [193 P. 943] ; *McPhetridge* v. *Smith,* 101 Cal.App. 122, 142 [281 P. 419] ; *McNulty* v. *Copp,* 91 Cal.App.2d 484, 490 [205 P.2d 438] ; 10 Cal.Jur. 809-810; 12 Cal.Jur. 829.)

The elaborate device of the "round robin" exchange of checks between the corporation and Rose Sesenna to make it

appear that the full $12,000 was being paid for the stock, standing alone, might as appellants argue be only a device to exchange the real properties for the stock while apparently complying with the corporation commissioner's permit which required the stock to be issued for cash. ▮ However, there was other evidence from which the court could reasonably infer otherwise. Upon the trial of this action the Sesennas positively testified that they paid the full $12,000 and upon being asked where the $12,000 came from they testified that it had been secured by the sale of other securities. When it was later proved beyond question that this testimony was false neither Sesenna again took the stand to offer any further explanation. It was also proved that in 1936 Dandini had employed a surveyor to survey certain land belonging to a Mr. and Mrs. Rees and that during that year he was sending a check to Mrs. Rees monthly. A part of the property conveyed by Mrs. Sesenna to The Montreal Corporation had been conveyed to Mrs. Sesenna by the same Mr. and Mrs. Rees and was the same property of which Dandini had secured the survey in 1936. The reasonably permissible inferences from this chain of circumstances when fitted together hardly need to be elaborated. Why did Dandini have the property surveyed in 1936? Why was he making monthly payments to Mrs. Rees? Why did this same property pass from the Reeses to Mrs. Sesenna and from her to The Montreal Corporation? Why in connection with this transaction did the Sesennas go to such an elaborate effort to make the stock purchase appear to be a cash transaction and falsely testify in this proceeding that they had in fact paid the full $12,000 in money . which they had obtained by the sale of other securities? And why, if the transaction was as innocent as counsel now argue on appeal, did not the Sesennas take the stand again to make that explanation after the falsity of their previous testimony had been fully established by other evidence?

In the circumstances of this transaction and the other evidence in the case the inferences of fraud and conspiracy drawn by the trial court find reasonable support.

We asked the parties to brief the question whether the fraud found by the court was intrinsic fraud in the separate maintenance action. We have concluded that it was not. Had it been limited to false or perjured testimony in the separate maintenance action another question would be

presented, but here the conduct of the parties went beyond the giving of false or perjured testimony in the action itself. Under the findings of the court they engaged in an elaborate and active conspiracy to conceal the facts from the plaintiff so that she was thereby prevented from litigating the question of her rights in this property in the separate maintenance action. ■ At least where one party occupied a confidential relation to the other active measures taken by one to conceal the true facts from the other constitutes extrinsic fraud. (See the full discussion and the cases collected by the court in *Jorgensen* v. *Jorgensen,* 32 Cal.2d 13, 18-21 [193 P.2d 728].)

■ We find nothing in the argument that the court could not award the newly discovered community property to the wife in this action without setting aside the separate maintenance decree. The same argument was summarily disposed of in *Milekovich* v. *Quinn,* 40 Cal.App. 537, 545-546 [181 P. 256] : "It is not necessary under the rule announced in *Green* v. *Duvergey, supra,* [146 Cal. 379 (80 P. 234)], that a divorce decree be set aside in whole or in part." The court in this action gave the plaintiff the additional relief of which Dandini's extrinsic fraud had deprived her in the original action. To do that it was not necessary to set aside the original decree, which had properly disposed of all of the community property disclosed in that action. It would be futile to set aside the disposition of property made by the former judgment only to readopt the same disposition in a new judgment.

■ We can find no reason for applying section 172a, Civil Code, to this proceeding. The gist of the action is not to set aside a transfer of community property conveyed by the husband to a third person. It is to reach community property held in trust for the husband in fraud of the rights of the wife.

■ Since the court in the separate maintenance action had the power to award all community property to the wife, and since by the extrinsic fraud of the husband the existence of this property was not disclosed to the court in the separate maintenance action, the court in this case had the like power in its discretion to award all of this property to the wife.

### The Appeal of The Montreal Corporation and The Johnsons

Appellants Johnson purchased all of the stock of The Montreal Corporation from the Sesennas. The corporation then held two parcels of real property. The corporation transferred this property to L. E. Johnson, he transferred it to

his wife who later transferred it back to him. █ It is clearly established that the property is held in trust by Johnson for the corporation, these several transfers having been made only for convenience and without consideration. The decree awards this real property to plaintiff. It is admitted that appellants Johnson acted throughout in good faith.

The liability enforced by the decree is not a personal liability of the appellants Johnson but the liability of The Montreal Corporation of which they have the misfortune to have acquired all of the outstanding stock. Under the findings The Montreal Corporation was fraudulently used by Dandini and the Sesennas to take title to real property which was in fact the community property of the Dandinis, the legal title being lodged in the corporation in fraud of Mrs. Dandini's rights. The corporation thereby itself became a party to the fraudulent conspiracy with resulting liability to Mrs. Dandini. These appellants argue that in some way the transfer of all the corporate stock to them extinguished this corporate liability. █ It is the very essence of corporation law that the corporation is a separate legal entity with rights and duties separate and distinct from those of its stockholders and no mere transfer of any or all of the stock in a corporation can operate to extinguish any legal obligation which the corporation then owes to a third person. As the Supreme Court of Washington tersely put it in one case "a change in the ownership of the stock does not change the obligations of the corporation." (*Davis* v. *Bigelow Bldg. Co.*, 150 Wash. 576 [274 P. 106].)

█ After the transfer of the stock, as before, the corporation held the real property subject to Mrs. Dandini's rights. The liability here enforced is enforced primarily against the corporation and it is only because L. E. Johnson is holding legal title to the property as a naked trustee for the corporation that the judgment also runs against him.

### The Appeal of Stanley

Stanley purchased a parcel of real property in Hayward from the corporation while it was in the control of the Sesennas. Judgment went against him on the theory that he took with knowledge of Mrs. Dandini's rights. The only evidence claimed to show knowledge on Stanley's part is found in the following testimony of the witness Gleason:

"Q. During your employment during that year (1938),

did you ever have any conversation with Mr. Wilfred Stanley concerning The Montreal Corporation? A. Merely that Mr.——

"Q. Well, you did have such a conversation? A. I did, yes. . . .

"Q. Now, then, just what was said, as you can recall? A. Well, in substance, Mr. Stanley said that he just came back from taking Mr. Dandini out to look at some property in Hayward, relative to putting on a building, house of some kind for amusement purposes, or something to that nature. . . ." (An additional statement contained in the answer was stricken by the court.)

Stanley denied that he had known anything about The Montreal Corporation before he bought this lot and that the lot that he purchased from The Montreal Corporation had ever been visited by him with Dandini, although he testified freely that he had visited other property with Dandini.

It will be seen from the quoted testimony that while the witness testified that he had a conversation with Stanley about The Montreal Corporation he recounted no such conversation when asked to give it. Instead he related a conversation about going to see an unidentified lot in Hayward with Dandini. There is nothing to connect this unidentified lot with the one that Stanley later purchased. We agree with this appellant that the judgment against him finds no substantial support in the evidence.

Judgment against appellant Stanley reversed; judgment against all other appellants affirmed.

Nourse, P. J., and Goodell, J., concurred.