[Civ. No. 157. Fifth Dist. Mar. 7, 1963.]

BESSIE PROTOPAPPAS, Plaintiff and Respondent, v.
STAVROS PROTOPAPPAS, Defendant and Appellant.

Taylor & Taylor and Edward T. Taylor, Jr., for Defendant and Appellant.

Cardozo, Trimbur & Nickerson and Charles K. Brunn for Plaintiff and Respondent.

STONE, J.—This appeal is from a judgment voiding a property settlement agreement, and setting aside that portion of a final decree of divorce approving said property settlement agreement entered in the First Judicial District Court of the State of Nevada.

Stavros and Bessie Protopappas were married in the State of Utah in 1941. Thereafter they moved to California, where they accumulated community property. In 1955 they moved to Reno, Nevada, and there acquired additional community property. Their unhappy marriage culminated in a Reno divorce May 10, 1956. The day before the divorce trial, the parties signed a property settlement agreement which provided for transfer of all community property to the husband. The husband was also bound by the agreement to pay support money for the children of the parties and to purchase a house at a cost not to exceed $12,000, for the wife and children.

In her complaint to set aside the agreement and the Nevada decree approving it, respondent wife alleged that appellant husband assured her that the value of their community property was less than the liens against it; that she was induced by this representation to convey and transfer her interest in the community property to him; that the property actually had a value in excess of $195,000. The evidence disclosed a net value of $118,871.

The circumstances surrounding the preparation of the property settlement agreement and the divorce action which followed, are these: Before seeing a lawyer about a divorce Bessie and Stavros discussed their problems, including property rights. Then they consulted a lawyer named Livierato, whom they had met at a Greek lodge. The attorney prepared a property settlement agreement in accordance with their instructions. The record reflects that he made no inquiry as to the value of the property or whether the division was fair and equitable. He advised them that it would be necessary for Bessie to have an attorney at the divorce hearing, and suggested a friend of his, one Mulcahy. Bessie testified that both Stavros and attorney Livierato advised her not to appear at the trial, and she didn't. Stavros appeared at the divorce hearing and was represented by Livierato; Mulcahy, although he

never met Bessie and she paid him no fee, purported to represent her.

Shortly after the divorce Bessie and the children moved to Price, Utah, where her family lived. She admitted that friends and members of her family advised her that she had been unfairly treated, but there is nothing in the record to indicate that these statements were other than mere surmise. The first information she obtained concerning the value of the community property was from an article in a Greek newspaper stating that Stavros, a man of wealth, had just returned from Europe with a new bride. She then caused an investigation to be made, which developed information that prompted this action. The complaint was filed two years and six months after the property settlement agreement was executed.

The trial court found that the husband had falsely represented the nature and value of the community property to the wife; that the wife relied upon such representations and as a result thereof entered into the property settlement agreement of May 9, 1956; that she was not represented by counsel at the time the property settlement agreement was entered into, nor at the trial before the Nevada court; that the court approval was secured by reason of the husband's fraudulent representations; and that the fraud was extrinsic in that it prevented the wife from appearing and asserting her rights at the trial. The court also found that the action was not barred by laches. No findings were made as to the value of the property or as to damages, upon the theory that these issues were not properly before the trial court.

The principal question on this appeal is whether the misrepresentations, which the court found led the wife to execute the property settlement agreement, together with her delusory representation by Mulcahy, constitute intrinsic or extrinsic fraud.

Appellant's discussion of the elements of extrinsic fraud, that is, fraud which will justify a collateral attack of a judgment, leaves us somewhat in doubt as to his position. He cites the landmark case, *United States* v. *Throckmorton*, 98 U.S. 61, 65 [25 L.Ed. 93], which determined that fraud perpetrated by a party or by his attorney is extrinsic if it prevents another party from having his day in court. And, of course, it also holds that if the fraud is extrinsic it provides a ground upon which a judgment may be collaterally attacked. Interestingly enough, appellant also cites California

cases which follow the rule of *Throckmorton,* among them *Martin* v. *Martin,* 110 Cal.App.2d 228 [242 P.2d 688], which applies the principle to a judgment in a divorce action under facts comparable to those before us.

Appellant first attempts to exonerate the attorney from any charge of fraud, upon the ground that he prepared the property settlement agreement according to instructions given him during a conference with the husband and the wife. It is significant, however, that the attorney did not inquire as to the nature of the community property, although appellant argues that he represented the wife as well as the husband; nor does the record indicate that he took any steps whatever to see that the wife was being treated fairly in the division of community property. Furthermore, there is at least an inference that the attorney abetted the husband's fraud, in that he arranged for an attorney friend of his to represent the wife at the hearing, an attorney unknown to her, one who never bothered to consult her. There could be no other purpose in having an attorney appear on behalf of the wife than to convey to the court the impression that he was there protecting the wife's interests.

Assuming, without deciding, that the attorney's actions fell short of extrinsic fraud, there is evidence that the husband misrepresented to the wife the nature and value of their community property. ▮▮▮ Numerous California authorities hold that fraudulent misrepresentation of community assets by a husband constitutes extrinsic fraud if the wife is thereby prevented from getting her fair share of such property. (*Jorgensen* v. *Jorgensen,* 32 Cal.2d 13 [193 P.2d 728]; *Vai* v. *Bank of America,* 56 Cal.2d 329 [15 Cal.Rptr. 71, 364 P.2d 247].)

The husband attempts to justify his actions upon the presupposition that a wife is presumed to be as familiar with community property as is the husband. He also implies that the principle of *caveat* applies to community property dealings between husband and wife.

▮▮ That neither theory is countenanced by the courts of this state is clear from the following language of the Supreme Court in *Jorgensen* v. *Jorgensen, supra,* at page 21:

"As the manager of the community property the husband occupies a position of trust (Civ. Code, §§ 172-173, 158), which is not terminated as to assets remaining in his hands when the spouses separate. It is part of his fiduciary duties to account to the wife for the community property when the

spouses are negotiating a property settlement agreement. The concealment of community property assets by the husband from the wife in connection with such an agreement is therefore a breach of a fiduciary duty of the husband that deprives the wife of an opportunity to protect her rights in the concealed assets and thus warrants equitable relief from a judgment approving the agreement. . . . It is immaterial whether the husband or the wife has submitted the property settlement to the court for approval; the fraud of one spouse in concealing the assets, if not discovered by the other, precludes the latter from protecting his or her rights as to the concealed assets in the divorce proceeding.'' (See also *Vai* v. *Bank of America, supra*; *Flores* v. *Arroyo,* 56 Cal.2d 492, 494 [15 Cal.Rptr. 87, 364 P.2d 263].)

In the light of the foregoing authorities, the question is narrowed to one of fact: Did appellant fraudulently misrepresent to his wife the nature and extent of their community property? ▇▇▇ The findings of the trial court, summarized hereinbefore, all confirm the allegations of extrinsic fraud on the part of the husband. These findings are largely predicated upon the wife's testimony, as appellant points out, but absent a showing that her testimony is inherently improbable, this court will not set aside the findings of the trial court based thereon. (*Francis* v. *City & County of San Francisco,* 44 Cal.2d 335, 340 [282 P.2d 496]; *Gimbel* v. *Laramie,* 181 Cal.App.2d 77, 80 [5 Cal.Rptr. 88].) It has not been shown that the wife's testimony is unworthy of belief, only that there is a conflict between her testimony and that of the husband. ▇▇▇ As a reviewing court, we will not evaluate the testimony of one witness as against that of another. (*Estate of Teel,* 25 Cal.2d 520, 526 [154 P.2d 384]; *Van Cise* v. *Lencioni,* 106 Cal.App.2d 341, 346 [235 P.2d 236].)

▇▇▇ Appellant next asserts the doctrine of laches, urging that respondent's delay of two and one-half years in bringing this action precludes relief in equity. The facts pleaded in the complaint do not reflect that the wife was guilty of laches, and no facts alleging laches were pleaded by way of answer. *Hamud* v. *Hawthorne,* 52 Cal.2d 78, 84 [338 P.2d 387], holds that facts justifying the defense of laches must appear in the pleadings, so that the issue was not properly raised here. (*Reed* v. *Norman,* 41 Cal.2d 17, 21 [256 P.2d 930]; *Vai* v. *Bank of America, supra.*) However, had laches been properly raised in the trial court, the evidence amply

supports the finding which absolves respondent of the charge.
■ Although there are no fixed time limits governing laches, courts of equity are guided by the statute of limitations applicable to actions at law, and the three-year period would be applicable here. (*Vai* v. *Bank of America, supra,* p. 343.) Without burdening this opinion with a recitation of additional evidence, suffice it to say that respondent filed the action within three years from the date the property settlement agreement was executed, and within three years after the entry of the judgment which she now seeks to set aside.

■ A determination of laches rests so largely within the discretion of the trial court that a finding on that issue will not be set aside unless an abuse of discretion is clearly shown. (*Toomey* v. *Toomey,* 13 Cal.2d 317, 320 [89 P.2d 634] ; *Beckett* v. *Kaynar Mfg. Co., Inc.,* 49 Cal.2d 695, 700 [321 P.2d 749] ; *Lusk* v. *Krejci,* 187 Cal.App.2d 553, 556 [9 Cal.Rptr. 703].) We find no abuse of discretion here.

■ Appellant next argues that if fraud induced the wife's acceptance of the agreement, such fraud was negatived by the wife's ratification of the property settlement agreement subsequent to the entry of the divorce decree. He relies on the fact that in February in 1958 the wife's brother, an attorney practicing in Price, Utah, discussed with the wife her straitened financial circumstances and the difficulty she was having in supporting herself and the children. This conversation took place at a family gathering, and as a result the wife's brother wrote a letter to the husband demanding that he pay child support in accordance with the property settlement agreement. The letter concluded: "If the above matters are not taken care of within thirty days after the date of this letter, I shall have no choice but to institute proceedings in court to compel compliance with the provisions of this agreement."

The foregoing facts fall short of ratification. ■ In the first place, the authorities cited by appellant in support of his position specify that when a party does an act indicating his intention to ratify an agreement tainted with fraud, he must act with full knowledge of the facts constituting the fraud. (*Schied* v. *Bodinson Mfg. Co.,* 79 Cal.App.2d 134, 142 [179 P.2d 380].) The record reflects that the first intimation Bessie had of the fraud perpetrated by Stavros was received a short time before her brother wrote the letter. She had not then learned the facts which prompted her to file this action to set aside the judgment.

 Furthermore, the letter pertained only to the provisions of the property settlement agreement requiring support for the children. There was no provision in the agreement for alimony or support money for the wife. The home which the husband was to provide, like the child support payments, was primarily for the benefit of the children. The trial court was justified in looking upon the letter as an attempt to enforce an obligation to support the children, an obligation which rested on the father regardless of the contract.

Then, too, the trial court could have determined that the brother was acting as a brother and not as an attorney, in seeking support for the children. This court will indulge every intendment and every inference in support of the finding of the trial court. (*Berniker* v. *Berniker,* 30 Cal.2d 439, 444 [182 P.2d 557]; *Richter* v. *Walker,* 36 Cal.2d 634 [226 P.2d 593].)

The foregoing discussion of ratification leads to the husband's argument that the wife failed to restore the consideration she had received under the terms of the contract, at the time she gave notice of rescission. As heretofore noted, she had received some child support, but we do not find that she was under an obligation to return it as a condition precedent to rescission. As to the house, upon which the husband made a downpayment, clearly it was for the use and benefit of the children as much as for the wife. We find no merit in the husband's contention that the wife was required to deprive her children of a home in order to rescind the agreement insofar as it pertained to her community property interests.

The record reflects that the husband's failure to pay the amount he agreed caused the mother to use her earnings to support the children. The husband compounded the wrong of depriving the wife of her share of community property by only partially supporting his children. Thus he made it impossible for the wife to restore consideration. Certainly the fruits of the fraud cannot serve to shield the fraud itself. The Supreme Court said, in *Locke Paddon* v. *Locke Paddon,* 194 Cal. 73 [227 P. 715], at page 83:

"It would be manifestly unjust to require of the wife, as a prerequisite to maintaining an action to rescind a property settlement agreement on the ground of fraud, that she restore to the husband the moneys received by her under the agreement and used for living expenses and to which under the law

she would have been entitled to so receive and use notwithstanding the agreement [citation]." (See also *Davis* v. *Davis,* 49 Cal.App.2d 239, 242 [121 P.2d 523]; *Estate of McNutt,* 36 Cal.App.2d 542, 551 [98 P.2d 253].) Looking at the facts here in their totality, the wife's inability to tender anything to the husband at the time of giving notice of rescission, did not defeat her right to rescind the agreement.

Appellant's contention that the original complaint improperly pleaded notice of rescission is answered by an amendment to the complaint, made with permission of the trial court. This cured any defect in the complaint, so that appellant was not entitled to judgment on the pleadings, as he now insists.

Finally, appellant asserts that it was error to deny his motion for judgment on the pleadings, based upon the wife's allegation that the true value of the community property was well in excess of $195,000, while her proof at trial indicated a net value of $118,871. This discrepancy, argues the husband, constitutes a failure of proof. Scant attention need be given this argument because the gist of the action is the husband's fraudulent misrepresentation of the nature and value of the community property. Since he represented to the wife that the property had no net value, it is immaterial whether it was actually worth $195,000 or $118,871. As to either amount, the misrepresentation is patent. Additionally, no findings were made as to property values. The trial court was content to simply find that there was fraudulent misrepresentation as to value, taking the position that a determination of the true nature and value of the community property, a division of the same, and damages, were not issues before the court.

The judgment is affirmed.

Conley, P. J. and Brown, (R. M.), J., concurred.