[Civ. No. 22782. First Dist., Div. One. June 29, 1966.]

MARION D. ORLANDO, Plaintiff and Respondent, v. VINCENT ORLANDO, Defendant and Appellant.

---

Salvatore C. J. Fusco for Defendant and Appellant.

Garrett, Speier & Krivetsky and Fredric Speier for Plaintiff and Respondent.

SULLIVAN, P. J.—In this divorce action, defendant husband appeals from an order, entered after final judgment of divorce, awarding as community property to plaintiff wife the balance of certain monies determined to have been community assets concealed by husband.

Plaintiff and defendant were married in 1946 and separated in 1959. The present divorce action followed and after a trial an interlocutory judgment of divorce was entered on November 3, 1960, granting each of the parties a divorce from the other on the grounds of extreme cruelty. This judgment determined and divided community property and ordered payment of support and maintenance of plaintiff and the minor child of the parties. Final judgment of divorce was entered April 19, 1962.

On August 24, 1962, plaintiff filed a notice of motion to vacate the interlocutory and final judgments ''and to reopen the case for the submission of additional testimony regarding the defendant's ability to pay alimony and child support, regarding the extent and nature of community property of the parties, and regarding the amount of the award of such community property.'' This motion was based on the grounds that ''defendant . . . practiced and perpetrated extrinsic fraud upon the plaintiff and upon the Court in wilfully concealing community property and other assets of the parties.'' It was supported by declarations of plaintiff and William Barnes, an investigator hired by plaintiff to conduct an investigation of defendant's assets. It was accompanied by a memorandum of points and authorities. Defendant filed a memorandum in opposition. During the following months the deposition of defendant was taken and other discovery proceedings were had.

On October 15, 1963, plaintiff's motion to reopen came on for hearing before the court, at which time considerable testimony was taken. After the filing of memoranda by the parties, plaintiff's motion to vacate judgment and reopen the case for further trial was submitted on July 31, 1964. On September

14, 1964, the motion was granted and the case set for further trial on September 21, 1964. On the latter date, following argument, it was ordered ''that submission be made by way of letter and answered in the same manner, it being stipulated that hearing on the motion would be on the basis of evidence in the file and by way of additional evidence produced at the trial.'' This order was in turn vacated to permit the introduction of further evidence and on November 16, 1964, the matter was finally submitted.

On November 20, 1964, the court made its order providing *inter alia* that $1,899, being all of the remaining cash in defendant's safe deposit box at the Bank of America, which the court found to be community property, be awarded to plaintiff.[1] The order also provided that certain monies on deposit in a New York savings bank account be paid to plaintiff to be applied on arrearages in support payments, attorney's fees and costs.[2]

Defendant contends on appeal (1) that he committed no fraudulent act; (2) that, *if* he did, such fraud was ''intrinsic''; and (3) *if* there were an act of fraud, intrinsic in character, the court was without jurisdiction to vacate the judgment. We have concluded that none of these contentions have merit and that the order should be affirmed.

First, as plaintiff correctly points out to us, defendant nowhere contends that the court's order is not supported by substantial evidence. Indeed no such argument could be made. The instant record shows that defendant falsely stated at the trial of the divorce action in 1960 that he had no bank account in his own name at the Bank of America within a given 5-year period and that he had no safe deposit box there at the time of the trial.[3] Evidence was introduced during the

---

[1]The court's order is found in a minute order, reciting that it was made upon ''further trial after reopening of the case.'' Apparently from the concealed assets as originally discovered, certain amounts had been deducted and applied to arrearages in alimony and support payments. The minute order as set forth in the record is unclear and confusing and the parties have done little in the way of enlightening us as to its full details.

[2]It is not clear from the minute order whether the court also found these funds to be community property. Plaintiff states in her brief that they were not so characterized but were ''simply ordered paid'' to her. Defendant does not challenge this statement.

[3]In a deposition taken August 7, 1959, before the divorce trial defendant testified that within the preceding year he had no safe deposit box except the one at the American Trust Company, that within the preceding five years he had one at the Bank of America which he had closed out and that he had not opened another. At the trial in September 1960 he testified that he had a safe deposit box in his own name at the

present proceedings that defendant had a savings account in his own name as trustee for Eugene Orlando, the child of the parties, which was opened on September 29, 1958, with a deposit of $1,600 and closed on June 1, 1960, by the withdrawal of the then balance of $3,986.63.[4] Evidence was also introduced that defendant *did* have a safe deposit box at the Bank of America from March 20, 1956, up to the time of the present proceedings, defendant using several names therefor, including those of his mother and sister.

Clearly defendant's foregoing acts and statements constitute deceitful and fraudulent conduct. In the proceedings below defendant attempted to explain the nondisclosure of the bank account by claiming that it was not community property, that it was his money before marriage and that he did not consider it his money because it belonged to his son. Yet all eight deposits in the account were made during marriage and, despite the claim that the funds were for the son's benefit, the apparent reason given on closing the account was "Contemplating Trip." As to the nondisclosure of the safe deposit box, defendant, faced with the insurmountable evidence of its existence, attempts to argue before us that the negative answer was properly given because he should not have been expected or required to expand upon it by answering "No, but I have a safe deposit box in my sister's name." The argument is ridiculous. Contrary to defendant's claim, the record clearly shows that defendant committed fraudulent acts.

Were these acts such as to justify the trial court's order vacating the judgment and reopening the case?[5] ▮ A party may attack a judgment on the ground of extrinsic fraud

American Trust Company and that he had none at the Bank of America although he did have one there at one time but kept no money in it. Defendant also failed to list the Bank of America savings account in his domestic questionnaire filed in the divorce action in July 1959.

[4]As plaintiff asserts in her brief and defendant does not deny, the aforesaid savings account was closed prior to the commencement of plaintiff's motion to vacate and reopen (made on August 24, 1962) so that the court made no finding in reference to the account.

[5]While, literally read, the record shows that the court granted plaintiff's motion to *vacate* the *judgment* and reopen the case, it is apparent from the entire record, and the parties agree, that the court intended merely to follow the approved procedure of modifying only the property provisions of the judgment, leaving the provisions with respect to the termination of the marriage intact. See *Lopez* v. *Lopez* (1965) 63 Cal.2d 735, 738 [48 Cal.Rptr. 136, 408 P.2d 744] where the court said that "after the time for appeal or other direct attack has expired, upon a showing of extrinsic fraud or mistake relating solely to the property provisions of a decree of divorce the trial court should set aside or modify those provisions only, leaving that part of the decree terminating the marriage relationship in full force and effect."

when the conduct of the other party has deprived him of an opportunity to present his claim or defense or to obtain a fair adversary hearing. (*United States* v. *Throckmorton* (1878) 98 U.S. 61, 65 [25 L.Ed. 93]; *Craney* v. *Low* (1956) 46 Cal.2d 757, 759 [298 P.2d 860]; *Jorgensen* v. *Jorgensen* (1948) 32 Cal.2d 13, 18-19 [193 P.2d 728]; *Westphal* v. *Westphal* (1942) 20 Cal.2d 393, 397 [126 P.2d 105]; *Olivera* v. *Grace* (1942) 19 Cal.2d 570, 575 [122 P.2d 564, 140 A.L.R. 1328]; *Caldwell* v. *Taylor* (1933) 218 Cal. 471, 476-477 [23 P.2d 758, 88 A.L.R. 1194].) ''One who has been prevented by extrinsic factors from presenting his case to the court may bring an independent action in equity to secure relief from the judgment entered against him. [Citations.] Where the court that rendered the judgment possesses a general jurisdiction in law and in equity, the jurisdiction of equity may be invoked by means of a motion addressed to that court. [Citations.]'' (*Olivera* v. *Grace, supra,* 19 Cal.2d 570, 575-576; see *Cope* v. *Cope* (1964) 230 Cal.App.2d 218, 230-231 [40 Cal.Rptr. 917] and cases there cited.)

In *Jorgensen, supra,* the court said: ''The public policy underlying the principle of res judicata that there must be an end to litigation . . . must be considered together with the policy that a party shall not be deprived of a fair adversary proceeding in which fully to present his case. . . . The latter policy [permitting relief from a judgment] applies when a party's adversary, in violation of a duty arising from a trust or confidential relation, has concealed from him facts essential to the protection of his rights, *even though such facts concerned issues involved in the case in which the judgment was entered.*''[6] (Italics added.) (32 Cal.2d at pp. 18-19.)

''As the manager of the community property the husband occupies a position of trust (Civ. Code, §§ 172, 173, 158), which is not terminated as to assets remaining in his hands when the spouses separate. It is part of his fiduciary duties to account to the wife for the community property when the spouses are negotiating a property settlement agreement. The concealment of community property assets by the husband from the wife in connection with such an agreement is therefore a breach of a fiduciary duty of the husband that deprives

---

[6]Quoting from 3 Freeman, Judgments (5th ed), p. 2576 as follows: '' 'The failure to perform the duty to speak or make disclosures which rests upon one because of a trust or confidential relation is obviously a fraud, for which equity may relieve from a judgment thereby obtained, even though the breach of duty occurs during a judicial proceeding and involves false testimony, and this is true whether such fraud be regarded as extrinsic or as an exception to the extrinsic fraud rule.' ''

the wife of an opportunity to protect her rights in the concealed assets and thus warrants equitable relief from a judgment approving such agreement." (32 Cal.2d at p. 21.) (In accord: *Flores* v. *Arroyo* (1961) 56 Cal.2d 492, 494-495 [15 Cal.Rptr. 87, 364 P.2d 263]; *Vai* v. *Bank of America* (1961) 56 Cal.2d 329, 337 [15 Cal.Rptr. 71, 364 P.2d 247]; *Willson* v. *Burner* (1964) 230 Cal.App.2d 947, 950 [41 Cal.Rptr. 449]; *Hopper* v. *Hopper* (1964) 224 Cal.App.2d 446, 448 [36 Cal. Rptr. 767]; *Protopappas* v. *Protopappas* (1963) 213 Cal. App.2d 659, 663-664 [28 Cal.Rptr. 884]; *Gedstad* v. *Ellichman* (1954) 124 Cal.App.2d 831, 833-834 [269 P.2d 661].)

In *Jorgensen,* which involved a property settlement agreement, the court, framing a rule in such context, held that the principle granting equitable relief applied to "judgments approving and adopting property settlement agreements." (32 Cal.2d at p. 20.) But the same principle applies to matters which have been litigated rather than settled by agreement. (*Dandini* v. *Dandini* (1953) 120 Cal.App.2d 211, 216 [260 P.2d 1033]; *Clark* v. *Clark* (1961) 195 Cal.App.2d 373, 380-382 [15 Cal.Rptr. 863]; see *Jorgensen* v. *Jorgensen, supra,* 32 Cal.2d 13, 19-20; 3 Freeman, Judgments (5th ed.) p. 2576 quoted in *Jorgensen* (see fn. 6, *ante*).)

We therefore hold that where a husband conceals from his wife the existence of community assets whether in the course of negotiations for a property settlement agreement or in the course of litigating their claims to community property, such conduct is violative of his fiduciary duty to account to her for the community property, deprives her of an opportunity to fully present her case, constitutes extrinsic fraud and warrants equitable relief from a judgment. (*Lopez* v. *Lopez* (1965) 63 Cal.2d 735, 738 [48 Cal.Rptr. 136, 408 P.2d 744]; *Flores* v. *Arroyo, supra,* 56 Cal.2d 492, 494-495; *Jorgensen* v. *Jorgensen, supra,* 32 Cal.2d 13, 21-22; *Willson* v. *Burner, supra,* 230 Cal.App.2d 947, 950; *Hopper* v. *Hopper, supra,* 224 Cal.App.2d 446, 448; *Protopappas* v. *Protopappas, supra,* 213 Cal.App.2d 659, 663; *Clark* v. *Clark, supra,* 195 Cal.App.2d 373, 376-382; *Gedstad* v. *Ellichman, supra,* 124 Cal.App.2d 831, 832-834; *Dandini* v. *Dandini, supra,* 120 Cal.App.2d 211, 216; 3 Freeman on Judgments (5th ed.), § 1235, p. 2576; 29 Cal.Jur.2d, Judgments, § 160, p. 111; 30A Am.Jur., Judgments, § 805, p. 738; 49 C.J.S., Judgments, § 372, p. 744.)[7]

---

[7] We also recognize that "When community property is entrusted to the wife, she likewise occupies a position of trust." (*Jorgensen* v. *Jorgensen, supra,* 32 Cal.2d 13, 21.)

■ Applying these principles to the case before us, it is abundantly clear that defendant's conduct was such as warranted the equitable relief granted by the court. The record shows that defendant not merely failed to disclose and account to his wife for community property under his control but even took active and deliberate steps to conceal it from her.

We are not persuaded by defendant's cited cases, most of which are not in point. Those dealing with the problem before us involve situations where the wife was aware of the existence of the asset allegedly concealed. (See e.g., *Jorgensen* v. *Jorgensen, supra,* 32 Cal.2d 13; *Westphal* v. *Westphal, supra,* 20 Cal.2d 393.) Under the circumstances they require no detailed discussion. Nor is there any merit to defendant's claim that his fraud, if any, was as defendant puts it ''inside the courtroom'' and, if wrongful, consisted of perjury which could not be the basis of the relief granted. Defendant's conduct went beyond his false or perjured testimony in the trial itself and consisted of his deliberate concealment of the facts from plaintiff so that she was precluded from litigating her rights to the property. (*Dandini* v. *Dandini, supra,* 120 Cal.App.2d 211, 215-216; *Clark* v. *Clark, supra,* 195 Cal. App.2d 373, 380-381.) *Pico* v. *Cohn* (1891) 91 Cal. 129 [25 P. 970, 27 P. 537, 25 Am.St.Rep. 159, 13 L.R.A. 336], relied upon heavily by defendant in his brief and at oral argument, is not applicable here. Complete answer to defendant's argument is found in the following language from *Clark*: ''*His testimony in the trial or his alleged perjury therein is not the fraud* upon which the court bases its action, *but, rather, the fraud of concealment* of the existence of the property before or during the pendency of the action *so that the court was never allowed to pass upon the question of her rights.*'' (Italics added.) (195 Cal.App.2d at pp. 380, 381.)

The order appealed from is affirmed.

Molinari, J., and Sims, J., concurred.

A petition for a rehearing was denied July 19, 1966.