[Civ. No. 37203. Second Dist., Div. Four. Aug. 23, 1971.]

In re the Marriage of PAULA and JACK CARTER.
PAULA CARTER, Appellant, v.
JACK CARTER, Respondent.

COUNSEL

Fierstein, Dolin & Rothman and Harvey Fierstein for Appellant.

Crowley & Goffin and Arthur J. Crowley for Respondent.

OPINION

KINGSLEY, J.—In January 1969, Mrs. Carter filed a complaint for divorce to terminate the seven-year marriage of the parties. The matter came to trial in January 1970, after the effective date of the new Family Law Act. At trial the parties entered into a stipulation providing for the division of community property. The court took evidence on the remaining issues of support, costs and fees and (on January 29, 1970) ordered

that the community property be distributed in accordance with the oral stipulation.

On February 18, 1970, present counsel for the wife was substituted in the place and stead of her trial counsel and, on February 20, 1970, a request for findings of fact and conclusions of law was filed. The request specifically asked the court to make findings which would list each and every community asset, with their market value and any liens and encumbrances. On its own motion the court denied the request on the ground that it was filed after the 10-day period provided for by rule 232(b), Rules of Court.

On February 26, 1970, prior to entry of the interlocutory decree of divorce, Mrs. Carter filed a notice of motion for the following orders:

1. That the oral stipulation re division of community property be deemed non-enforceable;

2. That the oral stipulation re division of community property be set aside;

3. That relief from default be granted to appellant in her request for findings of fact;

4. That findings of fact be ordered prepared for the approval of the court;

5. That the court continue the matter for further proceedings re determination and distribution of community property.

In support of the motion, declarations by the wife and her present attorney, Harvey Fierstein, were filed. Declarations of Arthur J. Crowley and Cy Donner (accountant for the husband) were filed in opposition. On March 25, 1970, the matter was argued before the court and all motions were denied. Thereafter, a motion for a new trial was made, with an additional supporting declaration of Mrs. Carter. Said motion was also denied.

At the proceedings before and during trial, the wife was represented by Mr. Guy Ward of the law firm of Ward, Heyler anud Druten. Mr. Ward has been admitted to practice in California for approximately 27 years and, for approximately 10 years prior thereto in another state. He is past president of the Beverly Hills Bar Association and has served on the Board of Trustees of the Los Angeles County Bar Association. It was stipulated at the hearing on the motions that Mr. Ward is an "eminent member of the Bar." Mrs. Carter also had the services of Mr. Don Gursey, a certified public accountant. Part of these services included the tracing and

movement of assets from March 1, 1961, through 1969. He reconstructed assets and made a tentative division as to community and separate property, and a preliminary net worth statement was prepared. Subsequently Mr. Gursey received net worth statements of Mr. Carter for the period of the marriage. Mr. Ward also reviewed a financial statement prepared by Cy Donner (husband's accountant) showing the assets of Mr. Carter.

At the deposition of Mr. Donner, requests were made for appraisals on four entities known as limited partnership interests. Although Mr. Ward subsequently received some information as to these interests, he did not receive actual appraisals.

Mr. Gursey's audit of the books and records of Jack and Paula Carter was admitted into evidence and known as the "Gursey Statement." It indicated the following facts:

(a) That the values for various listed community assets were the "book value";

(b) That the cash balances in the savings accounts do not reflect credit for interest earned;

(c) That the stocks and bonds are carried at cost as of the date of acquisition and do not reflect current market value;

(d) That the wholly owned personal service corporations have made investments which are carried on the books at the net book values.

The "Gursey Statement" shows a community estate of $505,013 while the statement of Mr. Donner shows a community estate of $264,082.

In urging reversal, the wife contends that the trial court is required to ascertain the nature, extent and value of all community assets and their fair market value notwithstanding a stipulation between the parties as to distribution of community property; that the trial court abused its discretion in denying the wife relief from said stipulation; and that the trial court abused its discretion in denying appellant relief from default upon her failure to file a timely request for findings of fact.

## I

The statutory rule on distribution of community property is contained in Civil Code section 4800. At the time of trial that section provided: "The court shall . . . divide the community property and quasi-community property of the parties equally."

Rule 1242, California Rules of Court further required that: "The court in every case shall ascertain the nature and extent of all assets and obliga-

tions subject to disposition by the court in the proceeding and shall divide such assets and obligations as provided in the Family Law Act, *except upon the written agreement of the parties or an oral stipulation of the parties made in open court."* (Italics added.)

The wife argues that the exception in rule 1242 (oral stipulation) does not exonerate the trial court of its imposed duty to ascertain the nature and extent of all obligations subject to disposition. She reaches this conclusion by referring to rules of statutory construction to the effect that a qualifying phrase is to be applied to the immediately preceding words or phrase. (See *People* v. *Baker* (1968) 69 Cal.2d 44 [69 Cal.Rptr. 595, 442 P.2d 675]; *Hopkins* v. *Anderson* (1933) 218 Cal. 62, 65 [21 P.2d 560].) She thus admits that, once the parties have entered an oral stipulation, the court is relieved from making a division of the community property. Assuming, arguendo, that the court is not relieved of its duty to ascertain the nature and extent of community property, this burden is lessened by virtue of an oral stipulation. ■ Evidence on issues in a case may be limited in accordance with a stipulation by respective parties. (*Morrow* v. *Morrow* (1940) 40 Cal.App.2d 474, 485 [105 P.2d 129].) Indeed, the very purpose of such a stipulation in resolving issues for trial would be obliterated if the court were required to make a detailed investigation on each asset. In approving the stipulation of the parties the court is only bound to ascertain the nature and extent of community property to the degree necessary in order to exercise its discretion. ■ In the present case the court did not merly approve the stipulation without question. The following colloquy occurred between counsel and the court:

"MR. CROWLEY: Your Honor, after much conversation with opposing counsel and our respective clients, we have arrived at a stipulation concerning the wife's share of the community property, which I will recite. Mr. Ward will feel free to correct me on any point.

"I think the record should show first of all that both parties are here in court; and that there have been extensive negotiations carried on between both counsel; that we have made available to them all the accounting records.

"Opposing counsel has had the benefit of his own accountant to advise him and his client; and that we spent most of yesterday negotiating and since 8:30 this morning. It is now approximately ten minutes after eleven, and we have just arrived at the stipulation; so it is not anything that was arrived at hastily.

"THE COURT: All right.

"MR. CROWLEY: The wife shall receive as community property in full settlement of any and all claims she has to community property the sum of $150,000, payable as follows: —

"THE COURT: This is a cash sum you are talking about?

"MR. CROWLEY: It is a cash amount, but not payable in cash.

"THE COURT: A cash amount, but not payable by cash provision?

"MR. CROWLEY: She will receive the equity in the family home located at 603 Foothill Road, Beverly Hills, California, at a suggested sum of $45,000.

"THE COURT: All right.

"MR. CROWLEY: She will also receive the furnishings in that home, less certain specific items that are in dispute, which counsel and I know about, and which we are going to try to resolve later, at an agreed sum of $15,000.

"The wife shall receive the car now in her possession. I believe it is a Lincoln.

"MR. WARD: Yes.

"MR. CROWLEY: At the agreed sum of $5800.

"The wife will receive by way of retention of the $15,000 in cash now in her possession—that is, the wife already has that, and that will be a credit, as these other items are a credit against the $150,000.

"Those sums total $75,000 [sic]. Deducting that $75,800 from the $150,000 total, leaves us $74,200. That sum of $74,200 shall be payable as follows:

"One-third thereof, or $24,733, payable upon entry of the judgment, the interlocutory;

"An additional sum of $24,733 to be paid one year from the date of the entry of the interlocutory;

"And the remaining balance of $24,733 to be payable two years from the date of the entry of the interlocutory judgment.

"THE COURT: All right.

"MR. CROWLEY: This balance is to be payable without interest and without security.

"THE COURT: It is understood, this is all a division of community property?

"MR. CROWLEY: That's right. In other words, it is tax free to the wife.

"The Court: Tax free to Mrs. Carter?

"Mr. Crowley: That's correct.

"The Court: Without interest and without security?

"Mr. Crowley: That's correct.

"The Court: All right.

"Mr. Crowley: The husband shall indemnify the wife against any liability in connection with any joint income tax returns filed by the parties.

"In addition, the husband and wife shall execute and file joint income tax returns, Federal and state, for the calendar year 1969; and the husband shall pay the taxes on those returns."

It thus appears that the court made a sufficient inquiry to satisfy itself as to the nature and extent of the community assets. It need not do more.

## II

Mrs. Carter next argues that the trial court erred in denying her relief from the stipulation. The attorneys and their clients thoroughly discussed the property agreement. Both parties had accountants, and both were present in court, listened to the statement, and took no exception to the agreement. Not only did Mrs. Carter fail to protest when the stipulation was read but she expressed her satisfaction with it.

The court inquired of Mrs. Carter's understanding of the stipulation as follows:

"The Court: . . .

"Mrs. Carter, have you heard the stipulation reciting the property which you are to receive by way of your share of the community property and the agreed values of that property, that was just recited by counsel, you heard his statement in open court just now?

"The Petitioner: Yes.

"The Court: Do you understand the nature and value of these items that you are getting, the house, the furniture, the car, the cash and three periodic payments for the balance?

"The Petitioner: Yes.

"The Court: That is to be in a total agreed sum of having a value of

$150,000, of which $74,200 is to be in cash, and the balance in property at the values he stated?

"THE PETITIONER: Yes.

"THE COURT: And during the course of these proceedings, have you had the services and advice of counsel during all stages of the proceedings?

"THE PETITIONER: Yes.

"THE COURT: Counsel, you have also had accountants and had sufficient discovery to satisfy you that the nature and extent of all the property is known to you and to Mrs. Carter, is that correct?

"MR. WARD: We have, your Honor.

"THE COURT: Mrs. Carter, do you feel this is a fair and reasonable division of property and the provisions for its payments, and are you willing to accept it at this time as your agreed settlement?

"THE PETITIONER: Yes."

When Mr. Ward, attorney for Mrs. Carter at the trial, approved the stipulation and stated that sufficient discovery had been completed, Mrs. Carter was bound by the stipulation when she subsequently ratified it. (*Moving Picture etc. Union* v. *Glasgow Theaters, Inc.* (1970) 6 Cal. App.3d 395, 403 [86 Cal.Rptr. 33].) ▮ Such a stipulation made in open court constitutes " 'not only an agreement between the parties but also between them and the court, which the latter is bound to enforce, not only for the benefit of those interested, but for the protection of its own honor and dignity.' " (*Webster* v. *Webster* (1932) 216 Cal. 485, 489 [14 P.2d 522]; *Bordin* v. *Bordin* (1961) 193 Cal.App.2d 132, 133 [13 Cal. Rptr. 837]; *Cathcart* v. *Gregory* (1941) 45 Cal.App.2d 179, 187 [113 P.2d 894].)

▮ It is a fundamental rule of appellate procedure that an order will not be disturbed on an appeal prosecuted by a consenting party. A stipulation is a consent within the meaning of this rule. (*Atchison, T. & S. F. Ry. Co.* v. *Hildebrand* (1965) 238 Cal.App.2d 859, 861 [48 Cal.Rptr. 339]; *Brooms* v. *Brooms* (1957) 151 Cal.App.2d 351, 352 [311 P.2d 567].)

▮ There is ample authority to uphold the court's approval and acceptance of the stipulation in question.

However, Mrs. Carter further urges that the stipulation was not binding upon her as it was entered into as a result of fraud. Section 473 of the Code of Civil Procedure enables the court to grant relief under limited circumstances. The relevant portion of that section reads as follows:

"The court may, upon such terms as may be just, relieve a party or his legal representative from a judgment, order, or other proceeding taken against him through his mistake, inadvertence, surprise or excusable neglect."

Although the statute does not refer to fraud, our courts have applied section 473 in cases where fraud is proven. (*Orlando* v. *Orlando* (1966) 243 Cal.App.2d 248 [52 Cal.Rptr. 142]; *Peterson* v. *Peterson* (1955) 135 Cal.App.2d 812 [288 P.2d 171].)

■ The provisions of section 473 are applicable where a party seeks to vacate and set aside a stipulation. (*Troxell* v. *Troxell* (1965) 237 Cal. App.2d 147, 152 [46 Cal.Rptr. 723].)

■ In support of her various motions in the trial court and in support of her appeal, Mrs. Carter raises four major contentions:

(1) That the listed community property assets based all valuations on book value, with the exception of the family home and personal property, and further that no other appraisals of fair market value were ever presented to appellant;

(2) That the accounting statements did not carry entries for prepaid interest, retirement funds, gifts, the husband's apartment furnishings, and the husband's Maserati automobile;

(3) That the distribution received by the wife was fictitious in part in that the Lincoln automobile was valued at $5,800 rather than $5,233 (the value on Mr. Carter's books 18 months prior to trial);

(4) That almost $50,000 of the cash to be received by Mrs. Carter was deferred without interest and unsecured.

In her brief Mrs. Carter states: "It has universally been held that the non-disclosure by the husband of the nature, extent and value of community property constitutes a violation of his fiduciary duty to his wife and such violation constitutes a ground for invalidating a judgment, a stipulation or other form of judicial order." In support of this proposition the wife cites *Flores* v. *Arroyo* (1961) 56 Cal.2d 492 [15 Cal.Rptr. 87, 364 P.2d 263]; *Vai* v. *Bank of America* (1961) 56 Cal.2d 329 [15 Cal. Rptr. 71, 364 P.2d 247]; *Jorgensen* v. *Jorgensen* (1948) 32 Cal.2d 13 [193 P.2d 728]; and *Orlando* v. *Orlando* (1966) 243 Cal.App.2d 248 [52 Cal.Rptr. 142].

An examination of these cases reveals that none sanction relief from a property settlement agreement where one party discloses the book value of community assets, but fails to disclose the market value. In *Flores* v.

*Arroyo,* the parties entered into a property settlement agreement whereby the husband represented that the agreement contained all items of community property. In fact, the husband used community property funds to purchase certain real property which was concealed from the wife. Title was taken in the name of Esther G. Arroyo and recorded in her name alone. In reversing a judgment of dismissal, the court held that the allegations of the complaint were sufficient to constitute extrinsic fraud in depriving plaintiff of her interest in the real property.

In *Vai* v. *Bank of America,* the wife sued to rescind a property settlement agreement on the basis of fraud. The court held that constructive fraud was present in the husband's failure to fully disclose material facts regarding the value of community assets. The facts in *Vai* are substantially different from the present case. The husband represented that he had not received any salary as an officer of Padre Vineyard; that little would be realized if Padre Vineyard were sold, that the vineyard was in danger of insolvency and that both husband and wife would be held liable on a continuing guaranty of Padre's liabilities. The facts were directly contrary and, furthermore, 23 days before the agreement was executed, the husband had entered into an agreement for the sale of Padre Vineyard at a considerable profit.

In *Jorgensen* v. *Jorgensen,* the husband represented that certain shares of stock were his separate property when, in fact, they were mostly community property. In denying the wife the right to set aside a property settlement agreement, the court held that the wife must take her position and, if necessary, investigate the facts. The wife did not allege that her attorney intentionally failed to protect her property interests. Consequently she was barred from relief because she chose to rely on her husband's classification rather than undertake an independent investigation.

In *Orlando* v. *Orlando,* the husband stated that he had neither a bank account nor a safe deposit box. In permitting the wife to vacate the interlocutory and final judgments, the court stated (at p. 253): "We therefore hold that where a husband conceals from his wife *the existence* of community assets whether in the course of negotiations for a property settlement agreement or in the course of litigating their claims to community property, such conduct is violative of his fiduciary duty to account to her for the community property, deprives her of an opportunity to fully present her case, constitutes extrinsic fraud and warrants equitable relief from a judgment." (Italics added.)

In distinguishing *Jorgensen,* the court in *Orlando* said at page 254: "We are not persuaded by defendant's cited cases, most of which are not

in point. Those dealing with the problem before us involve situations where the wife was aware of the existence of the asset allegedly concealed."

Thus, *Flores, Vai,* and *Orlando* are concerned with factual situations of actual concealment in failing to inform the wife of the *existence* of community assets. The *Jorgensen* case is directly on point in that the asset itself was not concealed.

Mrs. Carter's complaint that she was not informed of the market value of the several items does not constitute concealment within the meaning of the above cases. As to items not reflected at market value, most of the stocks and bonds were the separate property of the husband. With respect to the remaining bonds, it would appear that an examination of the stocks and bonds listed in the Wall Street Journal would have reflected current fair market value. There was also no showing that the husband intentionally concealed the market value of his real estate ventures and no showing by the wife of any difference between book value and fair market value. At least one real estate transaction consisted of the purchase of mortgages where the book value may actually have been greater than the market value due to a discount factor which must be considered in selling such mortgages. Similarly, investigation could have revealed the fair market value of the husband's corporations. Counsel for the husband states that the principal asset of the corporations in question was cash. Consequently, there should be no difference between market value and book value. There has been no showing that Mrs. Carter was deprived of the knowledge of these assets. Moreover, in his cover letter to Mr. Ward on the preliminary audit, Mr. Gursey, accountant for the wife, stated: "Before any final determination is made relative to division of property, I recommend that the procedures as outlined in the accompanying notes be adhered to in order to reflect all assets at the fair market value at the date agreed upon for division purposes."

Note 4 of Mr. Gursey's "Notes to Assets" reads:

"The stocks and bonds are reflected on the books at the cost value when acquired and does [sic] not reflect the current market value."

Note 5 states that the closely held corporations are reflected at net book value, and that the various joint ventures must be appraised in order to determine the fair market value of the corporations. Mr. Gursey further referred to the "Tax Shelter" nature of the real estate joint ventures in determining that appraisals would be necessary to reflect fair market value.

In light of these statements by her accountant it is incredible that Mrs. Carter now complains of concealment. Her professional assistance in this

regard could have ascertained any difference in the valuations had such an investigation been deemed necessary. Furthermore, the court asked Mr. Ward, counsel for the wife, if there had been sufficient discovery to satisfy him as to the nature and extent of all property known to him and Mrs. Carter. Mr. Ward replied, "We have, your Honor."

The value attributed to the Lincoln automobile was discussed by both parties. Any dispute could have been resolved by referring to the current "blue book" value.

During the reading of the stipulation, the court referred to the cash payments as follows:

"THE COURT: It is understood, this is all a division of community property?

"MR. CROWLEY: That's right. In other words, it is tax free to the wife.

"THE COURT: Tax free to Mrs. Carter?

"MR. CROWLEY: That's correct.

"THE COURT: Without interest and without security?

"MR. CROWLEY: That's correct."

Again, the cash payments to the wife were apparently discussed between counsel, and there was no objection taken to the form of payment.

In further support of her allegation of fraud, Mrs. Carter indicates that the accounting statements did not contain entries for retirement funds, a Maserati automobile, certain debts, gifts, and prepaid intrest. Although such entries are not fully reflected these contentions are nevertheless without merit. The declaration of Cy Donner, accountant for Mr. Carter, states that he had no personal knowledge of any retirement benefits and in his opinion Mr. Carter would not be entitled to receive any such funds until he reached retirement age, presumed to be 65. He further stated that the books and records carried no indication that there are assets in retirement funds which have a present or existing value. Mrs. Carter alleged that the Maserati automobile was valued at approximately $15,000. The opposing declaration of the husband's accountant states that the Maserati was purchased for $8,000 from separate property funds of the husband at Bowery Savings. Even the wife's accountant lists this fund as separate property. Accordingly, the car would not affect the community estate.

The declaration of Mr. Crowley, attorney for the husband, refers to a discussion concerning the furnishings of Mr. Carter's apartment and

states that Mr. Ward was advised of the existence and approximate value of the furnishings.

Loans receivable from Mr. Romley in the sum of $5,000, and Mr. Herd in the sum of $300, were both listed on the audit prepared by the wife's accountant. It is thus obvious that the wife was aware of these debts. Furthermore, the declaration of Cy Donner states that the $5,000 debt has been outstanding for approximately five years and was probably uncollectible.

█  Where affidavits in support of a motion are controverted by opposing declarations, the duty of determining the credibility of affiants is within the exclusive realm of the trial court, and this determination is rarely disturbed on appeal. (*Troxell* v. *Troxell* (1965) *supra*, 237 Cal.App.2d 147, 152.) █ The conduct of the trial court was entirely proper in determining the weight to be given to each of the declarations.

A sum of $193,500 was invested by M.D.C. (one of the husband's corporations) in four real estate ventures or limited partnerships. The bulk of this money was in the form of prepaid interest for a five-year period. The wife alleges that this money is an asset which does not appear as part of the book value of M.D.C. because it was written off in the year of payment.

During the year the prepaid interest was taken there were substantially less taxes payable. Consequently, there was more cash available to the community estate which would necessarily be reflected in the community assets shown in the accounting data. The figure of $8,875, shown in the audit, reflects the net book value of the various real estate ventures after applying prepaid interest and various losses. The book and records which were available to the wife and the cash and tax savings resulting from the interest prepayment refute any theory of concealment, even assuming that an entry should have been made.

The alleged gifts referred to by Mrs. Carter consist of payroll payments at intermittent periods to her husband's parents and an additional sum for living expenses paid to her husband's mother, purportedly for services rendered by them. The record is unclear as to the total value of the services. We are equally unclear as to whether any of the payments were from Mr. Carter's separate property. In her declaration Mrs. Carter stated that she was aware of these payments. Apparently she is now relying on Civil Code section 5125 rather than a theory of concealment of assets. Section 5125 provides that the husband cannot make a gift of community personal property or dispose of same without a valuable consideration. Mrs. Carter has failed to allege facts which would negate her consent to any such pay-

ments. Furthermore, the fact that the parents of Mr. Carter were on the payroll leads to an inference of valuable consideration for any monies paid.

■ The granting or denial of a motion to set aside an order or judgment under section 473 rests largely in the discretion of the trial court, and its decision will not be disturbed on appeal unless there has been a clear abuse of discretion. (*Moreno* v. *Venturini* (1969) 1 Cal.App.3d 286, 291 [81 Cal.Rptr. 551]; *Troxell* v. *Troxell* (1965) *supra,* 237 Cal.App.2d 147, 152.) ■ Although precise definition is difficult, the appropriate test of abuse of discretion is whether or not the trial court exceeded " ' "the bounds of reason, all of the circumstances before it being considered." ' " (*Troxell* v. *Troxell, supra; Slack* v. *Murray* (1959) 175 Cal.App.2d 558, 563 [364 P.2d 826].)

### III

■ Finally, Mrs. Carter contends that the trial court abused its discretion in failing to relieve her from default in requesting findings. The wife has failed to show what would be gained by such relief. It is entirely likely that the trial court would have stated that certain factual issues, namely, the distribution of community property, were received by stipulation.

■ Findings of fact are required only upon trial of a question of fact. (Code Civ. Proc., § 632; *Robinson* v. *Robinson* (1962) 208 Cal.App.2d 213, 217 [25 Cal.Rptr. 143].) This section assumes that evidence will be introduced on issues raised by the pleadings. However, where the issue is withdrawn and no such evidence is introduced, no finding is necessary. (*Robinson* v. *Robinson, supra,* at p. 217.) ■ The stipulation in question amounted to a withdrawal (*Robinson* v. *Robinson, supra,* at p. 217) of the community property issue, thus relieving the court of the duty of making findings.

■ Where the parties stipulate to a division of community property satisfactory to them, the court has no duty other than to see that the requirements of *Vai* have been met and that the agreement has been entered into voluntarily and freely. ■ Nothing in the Family Law Act changes the pre-existing rule as laid down in *Dexter* v. *Dexter* (1954) 42 Cal.2d 36 [265 P.2d 873], and many later cases, to the effect that the wife may, validly, and for reasons satisfactory to her, agree to something other than, or less than, she might have secured by judicial action if all legal and factual issues had been submitted to a court and had been determined in her favor. ■ On the record before us, there is ample evidence to support the trial court's implied findings that the wife entered into the stipulation freely, on the advice of competent counsel, after a full disclosure

by the husband of all matters which his fiduciary duty as prescribed in *Vai* obligated him to disclose. The contentions of Mrs. Carter on this appeal are without merit.

The judgment is affirmed.

Jefferson, Acting P. J., and Dunn, J., concurred.